## MINCY *v.* CRISLER.

[96 South. 162. No. 23288.]

1. VENDOR AND PURCHASER. *Vendor under no duty to disclose fact that reasonable and ordinary diligence would have disclosed.*
   Where purchaser was aware of presence of open ditch, and vendor made no representations regarding its course or the foundations of the house, he was under no duty to disclose any fact that reasonably diligent inspection would have disclosed.

2. VENDOR AND PURCHASER. *Purchaser entitled to assume that foundation did not rest on old lumber covering ditch.*
   Where there was nothing to indicate that covered portion of ditch changed its course, or that foundation of house rested on its covering, purchaser had right to presume that no reasonably prudent person would place the foundation pillars directly over a ditch covered with dirt and old and decaying lumber.

3. VENDOR AND PURCHASER. *Error to direct verdict for vendor, sued for purchaser's damages from collapse of ditch covering on which house foundations were placed.*

Where there was evidence that lumber covering ditch on which foundation pillars of house rested was old and defective, and that there was nothing to indicate that the foundation rested thereon, and it was doubtful whether inspection would have disclosed such fact, it was error to direct verdict for vendor in purchaser's action for damages to the house from the collapse of the ditch covering.

APPEAL from circuit court of Hinds county.

HON. W. H. POTTER, Judge.

Action by J. T. Mincy against H. F. Crisler. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

*Flowers & Brown* and *C. L. Hester,* for appellant.

The court should have little trouble deciding this case. It has only to consider whether the defect complained of was a patent or latent one. The degree of diligence necessary in examining the property in order to discover the defect determines whether it is a latent or patent one. If it could be discovered by the exercise of ordinary diligence it is a patent defect. If it could not be thus discovered it is a latent one. This statement is made on the authority of the definitions of patent and latent defects as given in *Lunn* v. *Shermar,* 93 N. C. 164, as follows: "A patent defect is one that may be discovered by the exercise of ordinary diligence." "A latent defect is one that cannot be thus discovered."

The defect complained of here was the fact that certain pillars of the house rested over the underground ditch, on an insecure foundation. The damage was caused by the covering over the ditch caving in and the foundation of the house being wrecked. The open ditch ran along the west line of the lot until within a few feet of the rear of the house. The west line of the lot was the center of the ditch. It was covered over from this point to Central street and on the south side of Central street. The turn in the course of the ditch that carried it under the house was

covered over, completely hidden from view. This could not be seen without crawling down the covered part of the ditch with a lighted candle. From an examination of that part of the ditch which was open it appeared to continue straight in its course and to miss the house. Appellant examined the property and it appeared to him that this was the case. The walls and fences that enclosed the ditch made a strict examination of it difficult but appellant made the examination that a man of ordinary or reasonable prudence would have made and failed to discover the defect. Appellee was present and saw that he had not discovered it but said nothing to apprise him of its presence or to put him on inquiry that would have led to its discovery. He sold the property to appellant for a sound price but it was not sound. The surface on which the foundation of the house rested appeared sound. On account of its unsoundness appellant was deceived and suffered damage. It was fraudulent for appellee to thus construct and conceal this defect. This action was brought to recover the damage actually suffered because of this fraud.

The question as to whether appellant exercised ordinary diligence in examining the property is one of fact. Or stated differently, the question as to whether ordinary diligence in the examination of the property would have discovered the defect, is one of law determining the nature of the defect existing. The degree of diligence exercised by appellant is a question for the jury to decide under instructions from the court as to the amount of diligence necessary. The facts remain that the defect existed, that appellant examined the property and did not discover it, and that he was damaged because of it.

The court, in sustaining the motion of defendant to exclude plaintiffs' evidence, made at the conclusion of plaintiffs' evidence, followed the *dicta* of the court in the case of *Oswald* v. *McGehee,* 28 Miss. 240, where it was said: "In the absence of all representations of the vendor, the purchaser is held to strict diligence in examining and judg-

ing for himself; but where representations are made as to doubtful matters, material to the transaction, the purchaser may protect himself by relying on the good faith of the vendor."

In our original brief we showed that this was not decision because representations were made in that case and the court was not called upon to say what the rule would be as to the amount of diligence required in the absence of representations. But this rule would not be objectionable if the court had made a distinction between patent and latent defects. This rule proceeds on the theory that all defects are the same in respect to the amount of diligence necessary in examining to discover them. It is in this respect that the rule is unsound. The rule followed by the great weight of authority is to this effect. In the absence of representations of the vendor, the purchaser is held to ordinary diligence in examining and judging for himself; but where representations are made as to doubtful matters, material in the transaction, the purchaser may protect himself by relying on the good faith of the vendor. Ordinary diligence in examining the property would reveal patent defects. It would not reveal latent defects.

We have not cited any cases on all fours with this case from point of fact. This is because of the exceptional nature of the facts of this case. The cases cited in our original brief do support the principle of this case, that he who sells an unsound thing for a sound price commits a gross fraud. The thing sold is not as represented, consequently the purchaser is deceived. Appellant exercised ordinary diligence in examining the property. He did not discover the defect. The defect was a latent one and appellee did not inform him of it. Appellee knew of the defect because he constructed it. He knew appellant was ignorant of it and did not inform him of its presence. The rule of *caveat emptor* should not be allowed to be made a barrier for fraud. Appellee says appellant should have taken a lighted candle and crawled down the covered ditch and thus covered the defect. He exacts much diligence of

appellant but recognizes no duty on himself. It would have been easy for appellee to have informed appellant of the defect. The defect was an unsuspecting and unthought of one. Appellee constructed it and hid it from view.

The case is for the jury under proper instructions as to the law.

*Powell & Harper,* for appellee.

Appellant on page 11 of his brief quotes the following definitions: "A patent defect is one that may be discovered by the exercise of ordinary diligence." "A latent defect is one that cannot be thus discovered."

It seems to us very clear that this defect is one that could have been discovered, and plaintiff, in his testimony, admits that if he had gotten down in the ditch and taken a flash light he could have discovered the true course of the ditch. We further contend that a ditch of this character, open and unobstructed, is such a fact as to put the appellant on notice, and that he should have attempted to discover the true course of the ditch, either by actual investigation or by inquiry of the appellee, neither of which he did. Did the appellant exercise ordinary diligence? We think it is self-evident that he did not, in that he neither made an investigation nor an inquiry, and that if he had done either, he would have discovered the defect. Thus under appellant's own definition of patent and latent defects, the defect, in this case, was a patent one.

The appellant testified that he saw the ditch, but did not go to the point where the covering commenced and investigate. He was not interested in the character of the covering. It might have been of iron, or of stone, or of wood, so far as the plaintiff was concerned. He relied upon his own opinion as to the course of the ditch. We say that the character of the covering could have been discovered by the exercise of ordinary diligence, which plaintiff failed to use.

Under the facts as shown by the record in this case, we submit that the defect was plainly a patent one and we believe the trial court so held.

Duty of grantor and grantee. In the case at bar, appellee and appellant were dealing at arm's length; there was no fiduciary relationship between them, of any sort. The grantor, in such a case, was under no duty to disclose the said defect to grantee. No representations were made in regard to the ditch. If the appellee violated any duty, it was by his silence. It would seem that the rule of *caveat emptor* should apply in this case. *Keates* v. *Earl of Cadogan*, 10 Common Bench Reports 591; 70 Eng. Common Law Reports, 591 at 600; *Doyle* v. *Union Pacific Railroad Co.*, 147 U. S. 113, 37 L. Ed. 223, at 228; *Hight* v. *Bacon*, 126 Mass. 10; *Ward* v. *Hobbs*, L. R. 3 Q. B. Div. 150; *Howard* v. *Emerson*, 110 Mass. 320. This rule does not apply to cases of fraud.

"This rule of *caveat emptor* has been applied also in many cases, to some of which we now refer." At page 230, "The vendor and vendee," says Atkinson on Marketable Titles, 134, "in the absence of special circumstances, are to be considered as acting at arm's length. When the means of information as to the facts and circumstances affecting the value of the subject of sale are equally accessible to both parties, and neither of them does anything to impose on the other, the disclosure of any superior knowledge which one party may have over the other is not requisite to the validity of the contract."

Again in *Valin* v. *Jewell*, 88 Conn. 151, 90 A. 36, L. R. A. 1915B. 324 at 326:

"The general rule is that, under such a contract the lessee takes the risk as to the condition and quality of the hired premises, and that the landlord is not liable to the tenant for injuries sustained by reason of the defective condition of the building leased. By such a lease the lessee purchases an estate in the premises rented, and the rule of *caveat emptor* applies, making it ordinarily the duty of the lessee, as such purchaser to make such examination

of the premises as is required in order to ascertain whether the premises have so fallen into decay, or become so dangerous, that a person occupying the same is liable to be injured. *Gallagher* v. *Button,* 73 Conn. 172, 175, 45 Atl. 819, 820, 8 Am. Neg. Rep. 5."

*Franklin* v. *Brown,* 6 L. R. A. 770, at page 772: "It is uniformly held in this state that the lessee of real property must run the risk of its condition, unless he has an express agreement on the part of the lessor covering that subject. As was said by the learned judge when deciding this case: 'The tenant hires at his peril, and a rule similar to that of *caveat emptor* applies, and throws on the lessee the responsibility of examining as to the existence of defects in the premises, and of providing against their ill effects.' 21 Jones & S. 479."

*Minor* v. *McNamara,* 81 Conn. 690, 72 A. 138, 21 L. R. A. (N. S.) 477 at 481: "The tenant ordinarily takes the risk as to the condition of the premises which he leases. *Gallagher* v. *Button,* 73 Conn. 172, 175, 45 Atl. 819. But when there are secret structural defects in the premises which render them dangerous for occupancy, known to the lessor but unknown to and undiscoverable by the lessee, by careful inspection, the law imposes the duty upon the lessor to make such condition known to the tenant, and failure to do so is negligence on his part which makes him liable for any injury which results to the tenant from such defective and dangerous condition."

The authorities, *supra,* clearly show that the weight of authority is, that the landlord is under no duty to disclose to a tenant that there is any defect in the construction of, or that the premises to be leased are unfit for occupation; and the authorities further show that the tenant must exercise reasonable diligence and rely upon his own investigations or protect himself by a covenant against any patent defect, which would render the premises unsuitable for use or occupation.

It is true that the case at bar involves parties, who occupied the relationship of vendor and purchaser, and that

in the authorities cited, the relationship was that of landlord and tenant. We would remind the court of that elementary principle of law, that a tenant becomes a purchaser of an estate for years in the leased premises, whereas, in the case at bar, the purchaser became the owner of the fee-simple title, the difference being in the duration of the estate. We submit that the same duty rests upon the vendor as upon the landlord in regard to the disclosure of patent defects, which might render the place unsuitable for use or occupation. 1 Sugden on Vendors (8 Am. Ed.), p. 2.

We call special attention to the decision of our supreme court in the case of *Oswald* v. *McGehee*, 28 Miss. 340 at 354, in which this court says: "In the absence of all representations of the vendor, the purchaser is held to strict diligence in examining and judging for himself; but where representations are made as to doubtful matters, material in the transaction, the purchaser may protect himself by relying on the good faith of the vendor and in breach of that, he will not be bound by the contract."

The case, *supra,* along with the weight of authority, shows that the purchaser must use diligence in examining the property, and our court says he must use strict diligence. We submit that the appellee, in the case at bar, was under no duty to disclose to the appellant that the ditch ran under the house nor the character of the covering; and that the purchaser was under the duty to use strict diligence in examining and judging the property, and that therefore any injury he may have sustained by the said defect, was *damnum absque injuria.*

Was there an implied warranty? The appellee conveyed this property to the appellant by a warranty deed. Of course, there can be no contention that there were any other express warranties, than those of seizin power to sell, freedom from incumbrance, quiet enjoyment and warranty of title. Thus if there was any warranty in regard to the course of the ditch or the covering, it must be implied. Could be, under any circumstances, imply that, in the case

at bar, the appellee warranted that the house was built on a firm or secure foundation, and that the earth under the foundation was firm and secure, and of such character that they would not change. On the face of the things, it would seem apparent that such could not be the case. We well know that, in many localities, there are various varieties of soil, and that some of these soils creep more than others. Would any one ever contend, that when the vendor sold a house and lot, that he then warranted that the soil, on which the foundation was placed, was of such a character that it would not creep, thereby causing parts of the foundation to settle, resulting in cracking of the walls and improperly fitting doors and windows. Certainly no one could contend that there was such a warranty by implication. *York* v. *Steward,* 43 L. R. A. 125 at 127; *Blake* v. *Dick,* 15 Mont. 236; Gear Land & T., 99; *Towne* v. *Thompson,* 46 L. R. A. 749; *Davidson* v. *Fisher,* 11 Colo. 583. See, also, *Valin* v. *Jewell,* L. R. A. 1915B. 327, and note to *Clifton* v. *Montague,* 33 L. R. A. 449, et seq., and the note to *St. George Mansions* v. *Hetherington,* 4 L. R. A. 1453 et seq.; *Jones* v. *Millsaps,* 71 Miss. 10, 18.

Authorities cited by appellant. The appellant's brief proceeds on the theory that the defect was a latent one and that the appellee was under a duty to disclose this defect, and that his failure to so disclose was fraudulent. We have shown that the defect was a patent one and that the trial court so held, and that the appellee was under no duty to disclose this defect.

In regard to fraud on page 5 of appellant's brief a quotation appears from section 11, page 22, of Smith on the Laws of Fraud. In the same work, section 4 on page 15, we find the following: "What representation not fraudulent. I. Examination by purchaser: Where the purchaser of personal property sees the property before taking possession of it. and has everv opportunity of inspecting it, and no concealment is made on the part of the seller, or representations, respecting the quality to induce the purchaser not to examine the same, the purchaser cannot recover in an

action for fraud and deceit." The only phrase within which the appellant could possibly bring himself is: "And no concealment is made on the part of the seller."

In the same work on the Law of Fraud, section 8, page 17, we find: "Concealment when fraudulent: The general rule is that a party engaged in a business transaction with another can commit a fraud only by fraudulent representations of facts or by such conduct or artifice, for a fraudulent purpose, as will mislead the other party, or throw him off his guard, and thus cause him to omit inquiry or examination, which he would otherwise make."

"Hence a party buying or selling property or executing instruments must by inquiry or examination, gain all the knowledge he desires. He cannot proceed blindly omitting all inquiry and examination and then complain that the other party did not volunteer all the information that he had. But there are exceptions to this rule." The author then proceeds to set out a variety of trust relations which are the exceptions mentioned.

We contend we come within the general rule as set out above in that there were no fraudulent representations of fact, nor conduct, artifice, design nor intention to mislead appellant, and that the damages suffered by the appellant were due to his failure to inquire or examine as to the course of the ditch, and as to what the foundation rested upon. The appellant proceeded blindly, omitting all inquiry and examination and now complains that the appellee did not volunteer all the information that he had. If appellee suppressed any fact, he did not do it by withholding any information when asked for nor by using some device to mislead the plaintiff. The evidence nowhere discloses any intention on the part of the appellee to mislead him. It cannot be said, that, simply because appellant covered over the ditch when such action was necessary for the erection of his house, that this was such artifice as used for the purpose of concealing the defect. and to mislead the appellant. This was the necessary course for the erection of the house on said lot, and we

believe that at no time did the appellee intend to mislead any one by so doing. We submit that the evidence of the plaintiff does not show any intention on the appellee's part, either at the time of the erection of the house or at the time of the sale to the appellant, that appellee intended to conceal the said defect or to mislead any one.

In Smith on the Law of Fraud, section 9, page 20, we find: "Duty to disclose: Concealment to be fraudulent must be of the facts and circumstances which one party is under some legal or moral obligation to communicate to the other, and which the latter has a right, not merely in *forum conscientiae,* but *juris est jure* to know."

Then again in section 10, page 21, we find: "To constitute the case of *suppressio veri,* there must be a suppression of fact, which one party is under legal or equitable obligation to communicate, and in respect to which he cannot be innocently silent."

We have clearly shown, *supra,* that the appellee was under no duty of any kind to appellant to disclose to him that an unobstructed ditch, six feet wide and five feet deep ran under the house after it was covered, when the said appellant went on the ground and examined parts of it and saw the ditch. So that under the law as announced by the appellant's own authority, we contend the trial court was correct.

The quotation from 20 Cyc., page 63, found on page 6 of appellant's brief is an authority upon fraud. We contend that it is in our favor. First: The quotation says that in the case of a patent defect the rule of *caveat emptor* applies. Our contention is that the defect in the case at bar was a patent one. Second: Said quotation says there must be an intentional omission to disclose a latent defect to constitute actionable fraud, and we contend that there has not been one iota of evidence to show that there was any intentional omission to disclose the defect. Third: The quotation says, that mere silence, with knowledge that the buyer was going upon the assumption that no defect exists, is sufficient to fix liability unless something is said

or done to put the buyer on inquiry.  If a ditch six feet wide and five feet deep, would not put one on inquiry, we contend that mere words or conduct could not possibly do so.

We do not quarrel with the case of *Weikel* v. *Sterns,* 142 Ky. 515, 134 S. W. 908, 34 L. R. A. (N. S.) 1035, but contend that it is not in point here, in that in it, a latent defect was involved, and concerning which no notice was given nor could it have been discovered by the exercise of ordinary diligence, because the house had been built over it, completely covering it.  The case of *Thomas* v. *Murphy,* 87 Minn. 358, 91 N. W. 1097, is not in point here in that there was a relation of trust and confidence existing between the parties.

The case of *Moseley* v. *Harrah,* 167 Mo. 74, 66 S. W. 942, cited on page 8 of appellant's brief, is not in point here in that there was an express representation that certain notes were good and secured by a deed of trust and that certain land was under cultivation, whereas in the case at bar we have no express representation.

The Missouri cases, cited by appellant on page 10 of his brief, are not in point.  In two of these cases, the subject-matter of the sale was a slave and the defect was, that the slave was diseased, and in one of the cases it appears that the buyer never saw the slave before purchase.  An ordinary man by the exercise of ordinary diligence would not be able to determine whether or not a slave was diseased, so the defect was a latent one.  The third case was a diseased horse and the same objections would apply here.

With the case of *Brown* v. *Gray,* 51 N. C. 103, 72 Am. Dec. 563, we do not quarrel, as it is rather in our favor, and the quotation from the case, *supra,* cited on page 10 of appellant's brief, shows that only where the defect could not be discovered by the exercise of ordinary diligence does the rule laid down apply, and we contend that the appellant did not exercise the prudence, which an ordinary man would use in the case at bar: In the case, *supra,* we find the following: "Mere silence of vendor who has knowledge

of patent defects in chattels sold, discoverable by the exercise of ordinary diligence does not make him liable in an action for deceit, there must be misrepresentation or concealment; there must be proof of *scienter* and a suggestion *falsi.*" We submit therefore, that the appellant's authorities do not advance his case in the least.

Conclusion. We submit that the action of the trial court in sustaining the motion to exclude plaintiff's evidence was eminently correct. The defect was clearly a patent one or one that could have been discovered by the exercise of ordinary diligence, and the law of our state requires the strictest diligence on the part of the purchaser. The size of the ditch was alone enough to put a reasonable man on inquiry, and the fact that the ditch was covered, for part of its course, through this lot was also sufficient to make a reasonable man inquire as to the purpose of the covering and its character. The appellee was under no duty to the appellant, except not to wilfully misrepresent, or place any obstruction in the appellant's examination of the property. The two parties were dealing at arm's length and there were no trust relations existing between them. The rule of *caveat emptor* applies, appellant does not even contend for an express warranty, and it is equally manifest that there could be no warranty by implication, as to the so-called defect. The appellant could not be presumed to have acted fraudulently because there is not one bit of evidence to show that at any time there was any intention on his part to defraud or mislead any one.

We submit that the case should be affirmed.

COOK, J., delivered the opinion of the court.

The appellee sold to appellant a house and lot situated on Central street, in the city of Jackson, Miss. The appellee had purchased this lot when there were no improvements thereon, and had caused to be erected the house which he sold to appellant. Central street runs east and west, and this lot is on the north side thereof, and has a

frontage of fifty-six feet thereon, with a depth of one hundred forty-six feet. A ditch, six feet wide and five feet deep, runs along the west line of the lot until it reaches a point about seventy feet from Central street, whence it turns to the southeast through the lot and crosses Central street at a point east of the center of the southern boundary line of the lot. Appellee covered a part of this ditch with lumber placed below the surface or level of the ground and placed dirt thereon, thus bringing the surface of the lot to the level. This covering extends from Central street to a point several feet beyond the point where the ditch deflects from its straight course along the west boundary line of the lot, and to a point a short distance to the rear of the house which appellee afterwards erected. This ditch runs under Central street, and is likewise covered through the lots fronting on the south side of this street, and empties at some point at the rear of the houses on the south side of Central street. The uncovered portion of the ditch was surrounded by a fence—a portion by a high board fence, the remainder by wire. That part of the ditch which was uncovered ran in a straight course along the west boundary line of the lot, and if its course had continued straight would have passed to the west of the house. There was nothing under the house or in front thereof to indicate the course of the ditch, and the change in the course thereof could not be detected from an examination of the premises from the rear without crawling down the ditch.

Appellee sold the house and lot to appellant through a real estate agent, but he was present when appellant examined the premises. Appellant saw the uncovered portion of the ditch, but made no inquiry in regard to its course, presuming that its course continued to the west of the house. Neither the appellee nor his agent disclosed the fact that the ditch ran under the house. In constructing the house, appellee placed certain foundation pillars directly over this covered ditch, and he did not disclose this fact to appellant. Several witnesses testified that the

lumber with which the ditch was covered was old and decaying when it was placed over the ditch.

Some time after the appellant purchased the property the covering over the ditch gave way, wrecking the foundation of the house, and otherwise damaging it. The appellant was forced to expend the sum of four hundred twenty-five dollars in placing a concrete culvert in the ditch and in repairing the house, and to recover the sum so expended this suit was brought. At the conclusion of the appellant's testimony a motion was made to exclude this testimony and grant a peremptory instruction for the defendant. This motion was sustained, and on appeal the sole question presented for decision is whether this ruling of the trial court was correct.

The solution of this question involves a consideration of whether, under the facts in evidence, the court was authorized to hold the defect which caused the injury and loss was a patent one; that is to say, one which appellant might have discovered by the exercise of ordinary diligence. It is conceded that appellant was aware of the presence of the open ditch on the rear of the premises, and that appellee made no representations whatever in regard to the course of the ditch or the foundation of the house, and the appellee was under no duty to disclose any fact that an inspection of the premises conducted with reasonable and ordinary diligence would have disclosed.

The appellee had covered the ditch, using as a base for this covering old and defective lumber, and afterwards had constructed the house with the foundation pillars resting on this insecure base, which he necessarily knew would give way in course of time. For a long distance north of the covered portion of the ditch its course was straight, and there was nothing in the appearance of the premises to indicate that its course changed beyond the point where the covering began, and certainly nothing to indicate that the foundation pillars of the house rested on an insecure covering placed over this ditch. The damage which appellant suffered was not caused by the mere fact that the

ditch passed under the house, but was due to the fact that the foundation pillars were placed directly over the covered ditch, and we think that appellant had a right to presume that, in constructing a house, no reasonably prudent man would place some of the foundation pillars thereof directly over a six-foot ditch, which he had covered with a layer of dirt resting on a base of old and decayed lumber, and it is doubtful whether any inspection which the appellant was required to make would have disclosed the fact that they were so located, and we think it was error to exclude the testimony for appellant and direct a verdict for appellee.

*Reversed and remanded.*