Cox, et al. *v.* LAWS, et al., d.b.a. LAWS DRUG STORE

No. 42405          October 29, 1962          145 So. 2d 703

*James E. Brown,* Starkville, for appellants.

*Burgin & Gholson, Wm. J. Threadgill,* Columbia, for appellees.

Rodgers, J.

This is a products liability suit growing out of the sale of a tube of penicillin ointment drug, alleged to have caused the death of the purchaser's husband.

Appellant, Mrs. Alma Cox, wife of Julius Cox, deceased, and mother of the other appellants, brought a suit in the Circuit Court of Lowndes County, Mississippi, in her own right and as next friend for her children, against appellees, owners and partners in a business known as Laws Drug Store.

The declaration alleges that Mrs. Alma Cox purchased from a registered pharmacist, employee of defendants, a tube of penicillin ointment, without a physician's prescription and the words "Caution: Federal Law prohibits dispensing without prescription" were clearly imprinted upon the carton containing the ointment. It is further alleged that the sale was in violation of Section 503 (B) of the Federal Food, Drug and Cosmetic Act, (Title 21, USCA, Section 353-b-1 (B) ), governing and regulating the sale of all drugs being toxic or otherwise potentially harmful in their use, and alleging that any drug containing any quantity of penicillin is governed and regulated by the foregoing Federal Act; that the employee-pharmacist was acting within the scope of his employment, and that he knew, or should have known, the dangerous propensity of the drug penicillin when applied externally to human beings.

It is further alleged that within forty-eight hours after the sale of the drug to Mrs. Alma Cox, her husband Julius Cox used some of the penicillin ointment on a wound on his leg, and that he died within a few minutes thereafter as a result of anaphylatic reaction to the drug. It is charged that it was the duty of the druggists to inform themselves as to the danger of penicillin, and that to sell the drug without a doctor's prescription was negligence; that defendants owed a duty to conduct their business so as not to injure others; that the unlawful sale of the drug to Mrs. Cox was the proximate cause of the death of her husband.

Defendants demurred to the declaration upon the grounds that (1) the declaration did not allege a privity of contract; and (2) the death of decedent was not caused by any act of defendant, but was the result of an independent, intervening cause. The demurrer was sustained by the trial judge, and when plaintiff failed to plead over, a final judgment was entered dismissing the suit. Plaintiffs appealed to this Court, seeking a reversal upon the theory that the allegations of the declaration are sufficient to charge a cause of action.

We proceed at once to the heart of this case on appeal. The real question to be determined by this Court is whether or not the time-worn "privity of contract doctrine" will bar a recovery under the facts alleged in this case. We have come to the conclusion that it does not, and a discussion of our reasons therefor follows:

We do not believe it is necessary at this time to upset the former opinions of this Court requiring privity of contract as a prerequisite to a cause of action, as is here asserted by appellee, in order to solve the problem here presented, as will be more fully developed hereafter.

The declaration in this case charges that defendants owed deceased a duty; that this duty was negligently violated by their employee, and that as a proximate result thereof deceased lost his life, for which defend-

ants owe damages to plaintiffs. Defendants asserted that since they did not sell the drug to deceased, there was no "privity of contract" with deceased and therefore there is no liability on defendants for the alleged neglect of duties.

■■ The privity of contract rule is said to be a general rule of law, that a manufacturer or seller of a product alleged to have caused injury cannot be held liable therefor, on the ground of negligence to one with whom he is not in privity of contract. The rule has come down to us through many decisions in England, as well as State and Federal Courts of the United States. Mississippi has followed these precedents as shown by the list of cases set out in two recent opinions by this Court. See Harrell Harrist v. Spencer-Harris Tool Co., et al., 244 Miss. 84, 140 So. 2d 558 (1962); E. I. DuPont de Nemours & Company v. Ladner, 221 Miss. 378, 73 So. 2d 249 (1954). See also 38 Am. Jur., Sec. 21, p. 662.

The origin of this doctrine is said to be the English case of Winterbottom v. Wright, 10 Mees & W. 109, 152 Eng. Reprint 402 (1842). See American Law of Products Liability by Hursh, Sec. 6:14, p. 530. The Winterbottom case has been criticized by law-writers and judges, to the end that a majority of the courts have broken away from the privity of contract rule. See Anno., 74 A. L. R. 2d, Sec. 55, p. 1215; American Law of Products Liability by Hursh, Sec. 6:15, p. 583, Sec. 6:62, p. 670; and E. I. DuPont de Nemours & Company v. Ladner, supra.

■■ Numerous exceptions have been grafted upon the rule. One of the earliest of these exceptions was enunciated in the case of Thomas v. Winchester, 6 N. Y. 397, 57 Am. Dec. 455 (1852). This case grew out of a mislabeling of a jar of belladonna sold by a drug manufacturer to a retail druggist, then to plaintiff, resulting in his injury. The Court said that the death or great bodily harm of some person was a natural and almost inevitable consequence of the sale of belladonna by means

of the false label, and that defendant's neglect put human life in imminent danger. The exception announced in this case is generally referred to as the "inherently dangerous product rule." The manufacturer and seller of inherently dangerous products under this rule may be held liable on the grounds of negligence in an action for an injury, notwithstanding there is no privity of contract between defendant and the injured person. Harrist v. Spencer-Harris Tool Co., supra. It has been said: "The courts have not hesitated to apply these principles in holding a person liable for negligence where the act complained of was imminently dangerous to the lives and property of others, regardless of whether there was a privity of contract between him and the injured person." 38 Am. Jur., Negligence, Sec. 22, p. 664.

This Court pointed out in E. I. DuPont de Nemours & Co., supra, that: "Poisonous or dangerous drugs, as well as dangerous chemicals, are familiar examples of substances recognized as inherently dangerous within the meaning of the rule stated above." Dangerous drugs have been generally recognized as being a product within the exception "inherently dangerous products." American Law of Products Liability by Hursh, Sec. 6:36, p. 586, and Chap. XV, Liability for Injury Caused by Drugs or Medicine, Sec. 15:3, p. 495; Anno. 74 A. L. R. 2d 1147; Anno. 79 A. L. R. 2d, Sec. 36, p. 368, Sec. 37, p. 369.

██ ■ The law seems to be well-settled that absence of privity of contract is no bar to recovery of damages from a manufacturer or seller of a product which caused personal injury or property damage, where the asserted basis of the defendant's liability is his deliberate violation of a statute or ordinance designed for the protection of the public. This is particularly true with reference to poisons, dangerous drugs and chemicals. American Law of Products Liability by Hursh, Sec. 6:65, p. 684; 38 Am. Jur., Negligence, Sec. 158, p. 827.

Before Sec. 1454, Miss. Code 1942, became law, this Court had before it the case of Meyer v. King, 72 Miss. 1, 16 So. 245, in which a father sued a druggist under the wrongful death statute for the death of his minor son. It was alleged that the druggist unlawfully sold chloroform to the minor, which he drank and caused his death. The defendant demurred on the ground that the father had no cause of action because the minor was drunk and guilty of contributory negligence in causing his own death, and under the law (at that time) the minor could not have maintained a suit for his injury had he lived, therefore the father could not sue. Contributory negligence is no longer a bar to a cause of action in Mississippi, and the last paragraph of the above opinion indicates what the Court would have done at that time had the action not been barred by the contributory negligence of deceased. The Court said ''Reprehensible as the conduct of the appellee was, tested by these rules, the sale was the causa sine qua non, the drinking the chloroform the causa causans; and the judgment is affirmed.''

It is now generally recognized by the great weight of authority that a druggist is liable for the wrongful act of his employee who knowingly sells caustic or dangerous drugs in violation of law to persons who are injured thereby, and who may have been reasonably expected to have come into contact therewith, although there was no privity of contract between the seller and such person so injured. American Law of Products Liability by Hursh, Sec. 2:80, p. 295, Sec. 6:9, p. 521, Sec. 15:25, p. 575. This is especially true where the drug is sold without a required prescription. See Wootan v. Shaw, 205 Okla. 283, 237 P. 2d 442; Wilcox v. Butt's Drug Stores, Inc., 38 N. M. 502, 35 P. 2d 978; Edelstein, et al. v. Cook, 108 Ohio St. 346, 140 N. E. 765.

██ █ We are of the opinion that the declaration filed in this case states a cause of action, although the allegedly dangerous drug was not intended for internal use but was intended to be applied externally to the person of a human being. This opinion is restricted to the facts set out in the declaration, and is not to be construed as passing upon, or dealing with, the unusual susceptibility of an individual to any particular drug, causic chemical, poison or substance.

The case is therefore reversed, judgment dismissing the cause of action set aside, the declaration reinstated, and the cause remanded for further proceedings in the trial court.

Reversed and remanded.

*Lee, P. J., and Kyle, Ethridge and Jones, JJ.,* concur.