JONES, Justice.
Appellees sued appellants in the Chancery Court of Washington County, and from a judgment rendered in favor of ap-pellees, appellants appeal. We affirm the case.
The cause of action arose in the following manner. In December 1966 appellants contracted to sell to Hiram T. Cochran and Davis T. Cochran certain lands in Washington County. The contract insofar as it *457 related to the price to be paid reads as follows:
[F]or the sum of SEVENTY-TWO THOUSAND AND NO/lOO . Dollars ($72,000.00) on the terms 'and conditions hereinafter stated.
The purchaser agrees to purchase said property and pay for same as follows. Assumption of 1966 taxes in the amount of $507.01; payment to McMillan Farms, Inc. of the sum of $7150.60; cash to be paid upon delivery of deed $23,917.39; assumption of first mortgage to McMillan Farms, Inc. $35,425.00 plus interest thereon; second deed of trust in the amount of $5,000.00 payable on or before five years annually, plus 6% interest thereon, beginning on December 15, 1967, and evidenced by five certain promissory notes.
In passing it might be noted that the figures given in the contract, when added, total $72,000.
The deed was made December 21, 1966, and the part thereof referring to the consideration recites: “FOR AND IN CONSIDERATION of the sum of $72,000.00 to be paid, * * The deed then detailed the manner in which said sum was to be paid: (1) by assumption of taxes, (2) by a deed of trust, (3) an amount in cash, and (4) another deed of trust from the grantees to the grantors, Blaylocks.
Prior to the acquisition and the ownership of the land by the Blaylocks, McMillan Farms, Inc. held a deed of trust dated April 8, 1960, for the principal sum of $54,500. This debt was evidenced by fourteen notes in the amount of $2,725, one note being due December 1 of each year beginning with December 1, 1960, through December 1, 1973, and a fifteenth and final note for $16,350 due December 1, 1974. This deed of trust evidenced that said notes bore interest at the rate of six per centum per annum from date, and that the interest was payable annually. The Blaylocks had assumed this instrument from a prior owner. For the closing of the sale, the Cochrans employed a reputable attorney of Washington County and when they met with the Blaylocks in the attorney’s office, the Blay-locks requested that this attorney represent all the parties to the sale.
The sale was closed but in a few days the attorney was advised by McMillan Farms that there had not been included past due interest aggregating more than $14,000. This interest had been allowed to accumulate because of a verbal agreement with McMillan by which rather than paying all of the interest annually, the Blaylocks were permitted to pay the accrued interest on one note at a time with interest on the other notes being allowed to accumulate. There was nothing of record to show such an agreement and each note provided for interest to be paid annually.
A bookkeeper for McMillan Farms had given a statement or schedule of the payments and interest, and this schedule was given to the attorney. However, it was never stated to him, nor was he advised, that the method of paying the interest varied from the face demand of the notes. Therefore in closing the sale, this past due interest was not paid to McMillan but was included in the sum paid the Blaylocks. A few days after closing, the attorney was notified by the bookkeeper for McMillan Farms that said $14,000 of interest was due. It is not claimed that the attorney knew of this change in the method of payment of the interest. He assumed the interest had been paid as the deed of trust and notes provided. While the statement prepared by the bookkeeper indicated a large amount of interest, the attorney testified that he did not consider this as interest due at the time and was not told to include this amount in the purchase price. The defendants in their answer stated that they themselves were under the impression the interest shown on the said ledger sheet constituted calculations showing the entire interest due on each of the notes during the life of said notes, *458 not that it was the amount of interest due at that time.
The question as to whether the Cochrans were advised of the oral change in the method of interest payment is not clear, and to say the least, is in dispute.
Ordinarily previous agreements are merged into the subsequent conveyance or deed, while in this particular case by mutual consent, or at least without objection by either party, the contract was introduced and considered along with the other papers and proof. It was admitted by all parties in their testimony that the price to be paid was $72,000. However, Mr. Blaylock, who testified for appellees, stated that while this was the price mentioned, it was also stated that he and his brother had to realize $24,000 for the payment toward other debts.
The attorney closing the transaction testified positively that $72,000 was the amount of the purchase price given to him by all parties.
Appellants place great stress upon the fact that the contract of sale contained the statement, “Assumption of first mortgage to McMillan Farms, Inc. $35,425 with interest thereon.” This is' not an unusual provision in a deed. There was no mention of accrued interest. According to the record, no further interest payments were due until approximately one year after the execution of this deed.
The chancellor, relying upon the parties’ introduction of and reference to, the sales contract, did consider same, not as having been merged in the deed but as a contemporaneous instrument. During the course of his opinion, the chancellor said:
Now, we have, first, a contract of sale. Under the proof, we have a buyer and we have a seller. Now, if we begin giving effect to that contract of sale, first, as to what the seller must net, rather than giving effect to first, the sale price, then we are in effect letting the tail wag the dog, because they had to have an agreement on what they would sell for and as to what they would purchase at. All parties testified that they would sell it for $72,000.00. All parties testified that they would buy it for $72,000.00. You’ve got to start there. If we do that, then all the provisions in that contract of sale become harmonized, none need be rejected. Everything can be given effect. Now, as to the mistake, if any, the Court doesn’t feel that the proof shows there was a mistake such as not to have a meeting of the minds. The Court thinks that this proof is clear that these parties, the defendants, intended to sell this property for $72,000.00 to these purchasers, the complainants Cochran, who intended to pay $72,000.00 for it, and they were going to pay it in such and such a spelled out manner.
The chancellor further held that the mistake was not a mutual mistake in the preparation of the contract or the deed but that it was a mistake in the distribution of the proceeds of the sale, and thus the real mistake was in a miscalculation by the appellees as to the amount of cash that would accrue to them on consummation of the sale. He held that they had received money to which they were not entitled. Therefore, the prayer of the bill for the cancellation of the $5,000 in notes executed by appellees, and for a judgment for the difference in the amount of overpayment to the Cochrans, should be granted. It is from this decree that the appeal is taken.
Appellant claims four errors exist in the chancellor’s finding:
(1) That the court erred in finding that there was a mistake made by the Cochrans in that testimony shows that the Cochrans understood the sales contract thoroughly and executed it exactly as it was written. There is no issue as to this matter. It is agreed that the contract was executed as written.
*459 (2) The court erred in its ruling because it is said where a unilateral mistake exists and such mistake is the result of negligence on the party claiming the same, the court should not grant relief to such party. The chancellor held that the mistake involved merely a mistake in cash amount anticipated by the appellants.
(3) It is also claimed that there was no meeting of the minds of the parties and no contract, and therefore that the court erred in failing to rescind the contract and restore the parties to the status quo. It was held by the chancellor that there was no issue as to the execution of the contract or the deed. They are both complete and admittedly executed by both parties with no charge of fraud or mistake as to the execution of said instruments. The mistake was in the distribution of the purchase price as provided for in the deed.
The final assignment is that the court erred in sustaining objections to evidence presented by appellants. This refers to questions propounded by Mr. Jacobs to his client, Mr. Jack Blaylock, when Blaylock was called as an adverse witness. Counsel asked Blaylock about an understanding as to how the balance of the purchase price that was owed by Mr. Harris to McMillan Farms was supposed to be paid.
An objection was sustained and a proferí was made to show: (1) that there had been an agreement between the Blaylocks and McMillan Farms before the purchase by Blaylock that would have allowed payments to have continued to be made as Mr. Morris had made them, and (2) that Mr. Morris had been paying one note per year plus the interest that accrued on that particular note and was not paying the notes annually as provided by the notes or the deed of trust. Objection to this evidence was sustained. This was prior to the purchase by the Blaylocks, and, of course, Mr. Cochran was not present and did not hear the conversation.
However, Mr. Blaylock later testified that Mr. Cochran knew of this agreement and his testimony was admitted without objection. This testimony of Mr. Blaylock, however, was denied by Mr. Cochran who handled the deal for himself and his son. The court sustained the objection on the grounds that said agreement was not pled, and also that defendant’s answer and cross-bill admitted the basic sale agreement. We fail to see where there has been any prejudice or harm accomplished by this ruling (if it were error, which we do not hold) in view of the chancellor’s later findings and rulings.
We are unable to say from this evidence that the chancellor was manifestly wrong in his findings and decree, and the case is therefore affirmed.
Affirmed.
GILLESPIE, P. J., and RODGERS, BRADY, and INZER, JJ.,. concur.