303 So.2d 466 (1974)
J. Delbert OLIVER and Katheryn C. Oliver
v.
CITY BUILDERS, INC., et al.
No. 47408.
Supreme Court of Mississippi.
October 21, 1974.
Rehearing Denied December 9, 1974.
Young, Young & Scanlon, O. Murray McNeely, Jackson, for appellant.
T.E. Davidson, Perry, Phillips, Crockett & Morrison, Jackson, for appellee.
SMITH, Justice:
J. Delbert Oliver and Katheryn C. Oliver have appealed from a judgment of the Circuit Court of Hinds County dismissing their suit, entered following the sustaining of a demurrer to the declaration filed by them against appellees, City Builders, Inc., and George Bailey and W.W. Bailey.
Facts stated in the declaration, and admitted by the demurrer, and to which we are limited, were: The Olivers purchased certain real estate from one Jansing (not a party to this litigation) on July 12, 1968. On the property conveyed to the Olivers by Jansing there was a house which had been constructed by appellees before they had conveyed the property to Jansing on January 6, 1966, more than two years prior to its acquisition by the Olivers. The declaration alleged that, some six months after Jansing conveyed the property to the Olivers, cracks began to appear in the floor and walls of the house, which were alleged to have resulted from faulty construction by appellees of the foundation of the house. It was alleged that because of this the Olivers were entitled to recover damages from appellees as the original builders.
*467 The parties appear to be in accord in stating that, in real estate transactions, the doctrine of caveat emptor has heretofore applied, appellant asserting that, under "the common law of England" the rule of caveat emptor had applied in such cases.
It is also clear that appellants recognize that, in order to prevail as remote purchasers of the property, the doctrine of caveat emptor must be abolished in such a case as their own. They urge this Court, therefore, to change the existing rule and to apply instead the products liability rule, or "strict liability in tort," against appellees who had built the house situated upon the land which they had purchased from Jansing. They assert that there has been a departure by courts throughout the country from the rule heretofore existing in real estate transactions and a substitution of the rule of "strict liability in tort" that is "reaching a thundering crescendo."
Numerous cases from other jurisdictions are cited by appellants which, they assert, support that statement.
The only real issue, and the only issue actually briefed and argued on this appeal, therefore, deals with the changing of the existing law by this Court and the application of the rule of strict liability in tort, thereby creating a liability on the part of builders of permanent structures on real estate to those who may become remote purchasers thereof.
An examination of the numerous authorities cited by appellants discloses that the cases fall into two main categories. (1) Cases involving builder-vendor's direct vendee, in which the court has held the builder liable to the vendee to whom the builder directly conveyed it, that is, the first vendee, for defective construction, holding that there was, in such a case, an implied warranty, and (2) cases wherein there was damage or injury which resulted from installation of some manufactured product in a building (such as water heaters, air conditioners, furnaces and the like) which exploded, caught fire or otherwise caused damage or injury because of a defect in the product or in its improper installation.
In this case appellants are not purchasers from appellees. The property was conveyed to appellants by Jansing, not by appellees, more than two years after appellees had divested themselves of all right, title or interest in it. It was more than six months after appellants acquired title from Jansing that, it was alleged, defects began to appear. And, of course, this is not a case where damage or injury has been caused by a defective water heater, furnace or other manufactured product.
No attempt will be made in this opinion to give a synopsis of each of the very numerous cases cited by appellants. Two of the cases, which are from neighboring states, Wawak v. Stewart, 247 Ark. 1093, 449 S.W.2d 922 (1970) and Cochran v. Keeton, 287 Ala. 439, 252 So.2d 313 (1971) are typical and will be mentioned to show the very restricted extent to which the courts have been willing to abrogate the doctrine of caveat emptor, even where they have been willing to do so at all.
In Wawak, a majority of the Arkansas Court held that a builder-vendor impliedly warranted a house to the first purchaser (the builder's own vendee, that is) against flooding of heat and air conditioning duct-work. The Court said:
The Stewarts brought this action for damages. The great question in the case, overshadowing all other issues, is whether there is any implied warranty in a contract by which the builder-vendor of a new house sells it to its first purchaser. (Emphasis added). (247 Ark. at 1094, 449 S.W.2d at 923).
A majority of the Arkansas Court concluded that such an implied warranty existed where a new house was sold by the builder to a first purchaser. That is the extent of the holding and there is nothing in Wawak to indicate that an implied warranty would be extended to a remote purchaser, *468 that is, a purchaser who did not buy from the builder. Indeed, no such question was before the Arkansas Court. Three of the seven justices dissented from that strictly limited departure from existing law. Mr. Justice Byrd, in a dissenting opinion, said:
I do not believe that the people of this State elected me to Legislate on the subject of implied warranties in the sale of real estate. The present Constitution of the State of Arkansas and also the proposed Constitution places such matters before the General Assembly and I think for good reason. When this matter comes before the General Assembly, interested parties, other than the parties to this litigation, with intimate knowledge of the problems involved in placing an implied warranty of fitness upon a house will have an opportunity to be heard. However, today's decision will just as surely affect the method and cost of doing business of persons not a party to this litigation as would such action by the General Assembly, but our rules of procedure do not permit such parties to even be heard on a petition for rehearing. (247 Ark. at 1114, 449 S.W. 2d at 932).
In Cochran v. Keeton, supra, the Supreme Court of Alabama decided, and again the decision was by a divided court, to change the rule of caveat emptor as it applied "in the sale of a new house by a builder-vendor." The Alabama Court merely held, in that limited situation, that an implied warranty existed. The Alabama decision, was limited, as was that by the Arkansas Court, to the vendee of the builder-vendor. Also, since even so, it effected a radical change in existing real estate law, it was made to apply prospectively only. As in the Arkansas case it was founded upon the theory of the existence of an implied warranty between the builder and the builder's vendee.
It is not contended that this is a case involving a vendee of a builder-vendor. It is not a case where injury or damage has been caused by a defective manufactured product installed in a building. Therefore, we are not confronted with a situation such as those which were dealt with in either of the two main categories of cases cited by appellants as supporting their view that existing law should be changed.
It should be noted that, while the present litigation involves a dwelling, a rule applying the doctrine of strict liability in tort with respect to a dwelling necessarily would, in reason, require its application, with equal force, to structures of every kind standing upon, and which are part of, real estate. Thus, in case of a transfer of a tract of land by a vendor, however remote from the builder such vendor might be, the purchaser, however remote in title from the original owner he might be, would be able to require the builder of any structure standing upon it to respond in damages for any deficiency therein, whether the structure should be a dwelling, outhouse, barn, office or any other type of building. Material and workmanship which may go into a structure are of infinite variety. An original purchaser of land on which a building is situated, for reasons of economy or for any other reason, may be satisfied, and may accept it from the builder in any condition in which it may be. He may waive defects, and he may do so by his actions or by writing or orally or by the mutual assent of the parties. Circumstances may be such between the original purchaser and the builder, that the former may be estopped to complain of the quality, type, class or kind of construction or material, or as to the strength, durability and appearance of the structure.
It would be strange indeed if, when the original purchaser conveyed the property to another, that his vendee could resort to the builder for damages for deficiencies in workmanship or materials which the original purchaser from the builder had accepted.
These things, and others, distinguish a structure erected upon land, of which it becomes *469 a part, from a manufactured device or product, to which the rule of strict liability in tort is properly applied. If it can be said that an implied warranty should exist as to the first purchaser from the builder, as in the Alabama and Arkansas cases, supra, such a warranty cannot be extended logically to remote purchasers. Real estate transactions require a written contract or deed, and a purchaser may insist upon having included therein any warranty or guaranty that he may desire as to buildings standing upon it, and, of course, he may refuse to purchase if the prospective vendor will not agree.
In those cases where the rule of caveat emptor has been abrogated to the limited extent of permitting recovery from the builder-vendor for defects in a new house by the builder-vendor's immediate vendee, this result has been predicated upon a holding that there existed, under the circumstances, and as a result of the relationship, an implied warranty. This Court has held that where parties to a transaction finally reduce its terms to an executed writing, all negotiations and previous understandings are merged into the writing and the terms of the writing will control. West v. Arrington, 183 So.2d 824 (Miss. 1966); Blaylock v. McMillan Farms, Inc., 214 So.2d 456 (Miss. 1968); Mississippi State Highway Commission v. Cohn, 217 So.2d 528 (Miss. 1969).
The above rule leaves little room for concluding that a warranty or guaranty, not expressed in the deed, logically may be implied nevertheless, even in the case of first purchasers of a new house from the builder. The written expression of obligations assumed by the grantor would seem to exclude the existence of others not stated, including a warranty by implication extending to remote purchasers of the land as to the condition of permanent structures standing upon it.
The action of the circuit court judge in sustaining the demurrer was correct and the judgment appealed from must be affirmed.
Affirmed.
RODGERS, P.J., and PATTERSON, WALKER, INZER and BROOM, JJ., specially concurring.
ROBERTSON, J., GILLESPIE, C.J., and SUGG, J., dissenting.
INZER, Justice (specially concurring):
I concur in the result of the majority opinion insofar as it holds that the rule of strict liability in tort or products liability does not create liability on the part of a builder-vendor to remote purchasers of a permanent structure on real estate. However, I do not concur with the opinion insofar as it tends to hold that the maxim of caveat emptor and the judicial doctrine of merger leaves little or no room for an implied warranty between a builder-vendor and the first purchaser. It has long been the rule in this state that a builder-vendor of a new home is liable to his vendee for latent defects. Mincy v. Crisler, 132 Miss. 223, 96 So. 162 (1923).
The common law maxim of caveat emptor was fundamentally based on the premise that the buyer and seller dealt at arm's length and that the purchaser had means to gain information concerning the subject matter of the sale equal to the seller. However, under modern conditions this rule has no application to latent defects in products built or manufactured by the vendor. Furthermore, the maxim of caveat emptor has been gradually restricted and circumvented until it is now a mere shadow of itself. To apply the maxim to an inexperienced buyer of a new home in favor of an experienced builder would result in a manifest denial of justice in many cases.
The rule that parties to a transaction who finally reduce its terms to writing merge all previous agreements into the *470 writing, does not preclude an implied warranty as between a builder-vendor and the first purchaser. An implied warranty arises by operation of law and when it arises it cannot be destroyed or defeated by the mere passage of title through a written instrument.
It is my opinion that as between a builder-vendor of a new home and his vendee, that there is and should be an implied warranty that the home was built in a workmanlike manner and it is suitable for habitation. However, this implied warranty does not extend to remote purchasers of the home.
RODGERS, P.J., and PATTERSON, WALKER, and BROOM, JJ., join in this specially concurring opinion.
ROBERTSON, Justice (dissenting):
I am unable to agree with the majority that, in Mississippi, the rule of caveat emptor still applies in all sales of real property, and that there must be privity of contract between the builder-seller and the homeowner in order for the homeowner to recover damages for latent defects in the foundation of his home.
The old common-law rule of caveat emptor was laid to rest in the 1923 case of Mincy v. Crisler, 132 Miss. 223, 96 So. 162. In Mincy, brick foundation piers for a home were constructed over a ditch covered with timbers and dirt. The home was built on these piers, and when the timbers over the ditch rotted and the foundation sank, the vendee sued the builder-seller. This Court held that the doctrine of caveat emptor did not apply to latent defects, and allowed the homeowner to recover damages.
This Court also answered the privity of contract argument in no uncertain terms in the landmark case of State Stove Manufacturing Company v. Hodges, 189 So.2d 113 (Miss. 1966). In State Stove, Yates and Gary contracted to build a home for Herbert H. and Frances Hodges; it was to be a "lock and key" job. Yates and Gary installed in the Hodges' home an electric hot water heater manufactured by appellant, State Stove Manufacturing Company. State Stove sold the heater to Orgill Brothers, a Memphis wholesaler. Orgill Brothers sold the heater, in its original container, to Yates and Gary, who also owned and operated a hardware store. The hardware store sold to Yates and Gary, contractors, and their plumber, Pittman, installed the electric hot water heater in the Hodges' home.
About eight months after the Hodges had moved into their home and while they were away on vacation, the electric water heater exploded and substantially destroyed the home and its contents. The Hodges brought an attachment suit in Hinds County Chancery Court against State Stove, a Tennessee corporation, and Yates and Gary, the contractors who built the home. The trial court dismissed the suit against Yates and Gary, finding that there was no causal connection between the explosion and "the way that the contractors installed the water heater". The trial court found against State Stove concluding that the manufacturer was negligent in the construction of the water heater, and also that the doctrine of res ipsa loquitur applied.
On appeal, State Stove argued strenuously that there was no privity of contract between it and the Hodges. We rejected that argument in clear, positive and unequivocal language when we said:
"Appellant contends that there was no privity of contract between it and the Hodges, and that the manufacturer of an appliance such as a hot water heater is not liable to the ultimate purchaser in the absence of some contractual relationship between them. Hence the first issue is whether privity of contract is necessary. We conclude it is not.

......
"Privity of contract between a consumer of a product and its manufacturer has not only been abandoned by every State in the Union, except Mississippi, *471 but it has no rational basis for continuance in such an action in this jurisdiction. The manufacturer, by placing a chattel or product upon the market, assumes a responsibility to the consumer, resting not upon the contract but upon the relation arising from his purchase, together with the foreseeability of harm if proper care is not used. Hence it is appropriate and necessary, in accord with the universal rule elsewhere, that we hold this duty is one imposed by the law because of the defendant's affirmative conduct, which he should know to be likely to affect the interest of another. The rule which we adopt extends to any product which, if in fact negligently made, may reasonably be expected to be capable of inflicting injury. Privity of contract is not necessary in a suit by a consumer against a manufacturer. ...
......
"In summary, Ford Motor Company v. Myers, [151 Miss. 73, 117 So. 362 (1928)] expressly required privity of contract in a suit by a consumer against a manufacturer. It is hereby overruled. E.I. DuPont de Nemours & Co. v. Ladner, [221 Miss. 378, 73 So.2d 249], Cox v. Laws, [244 Miss. 696, 145 So.2d 703], Harrist v. Spencer-Harris Tool Company, [244 Miss. 84, 140 So.2d 558], and Triplett v. American Creosote Works, [251 Miss. 727, 171 So.2d 342], were all decided on grounds not connected with the obsolete privity-of-contract doctrine. In fact, they all rendered caveats to the applicability of this doctrine in Mississippi.
"Since privity of contract is not essential in a suit by the consumer against the manufacturer, the next issues are (a) the basis and theory of liability of a manufacturer to a consumer for a defective product, and (b) whether the requirements of the appropriate theory exist in this action by the Hodges.
"After careful consideration of the precedents in this and other States, the history of these issues, and the many considerations pertinent to them, which are discussed subsequently, we conclude that the appropriate standards of responsibility are well stated in Section 402A of the American Law Institute's Restatement of Torts (Second), which we adopt insofar as it applies to a manufacturer of a product and to a contractor who builds and sells a house with the product in it. It states:
Special Liability of Seller of Product for Physical Harm to User or Consumer 
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

The foregoing rule is not exclusive. It does not preclude liability based upon the alternative ground of negligence of the manufacturer or seller, where, such negligence can be proved. Restatement (Second), Torts at 348." 189 So.2d at 115-116, 118. (Emphasis added).
We said further in State Stove:
"In the absence of privity, the liability is in tort and not in contract, and a concept *472 of warranty from the contract law of sales is irrelevant." 189 So.2d at 119. (Emphasis added).
In State Stove, we quoted with approval from Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal. Rptr. 697, 377 P.2d 897 (1962):
"Although in these cases strict liability has usually been based on the theory of an express or implied warranty running from the manufacturer to the plaintiff, the abandonment of the requirement of a contract between them, the recognition that the liability is not assumed by agreement but imposed by law * * *, and the refusal to permit the manufacturer to define the scope of its own responsibility for defective products * * * make clear that the liability is not one governed by the law of contract warranties but by the law of strict liability in tort." 189 So.2d at 119. (Emphasis added).
Although this Court reversed as to State Stove, holding that the manufacturer was not liable because Yates and Gary, the contractors, and their plumber, Pittman, substantially changed the condition in which the water heater was sold when they improperly installed the temperature relief valve in violation of the plain written instructions of the manufacturer as to proper installation, which faulty installation was the intervening sole, proximate cause of the explosion, we did clearly adopt the rule of strict liability in tort when we said that the manufacturer-seller is liable when the product reaches the user or consumer without substantial change in its condition. We also reversed as to Yates and Gary, the contractors, holding that they were liable to the Hodges under the doctrine of strict liability in tort.
It seems to me that the case at bar is much stronger than State Stove; City Builders, Inc. was the manufacturer, designer, contractor, builder and seller all rolled into one. All the requirements which we so carefully outlined in State Stove are fully met in the language of plaintiffs' declaration.
City Builders, Inc. (1) was "engaged in the business of selling such a product" (a finished house); and (2) the house was expected to and did reach "the user or consumer without substantial change in the condition in which it [was] said."
The plaintiffs charged in their declaration:
"10. Upon unearthing the foundation of plaintiffs house, the following disregard for proper construction procedures and negligence in the construction of said house on the part of defendants was discovered:
(a) The grade beam was resting on 6 to 8 inches of earth above the piling upon which it was supposed to be resting, and the steel rods in the piling were not tied into the grade beam according to plans and specifications;
(b) The mesh wire designed to reinforce the concrete slab was found to be laying on the ground below the concrete slab instead of being placed in the concrete as required by the plans and specifications; and
(c) The brick walls were not resting on concrete in all areas, but in places had merely been placed on top of 2 x 4s lying on the ground.
11. During the construction of plaintiffs home, defendants performed the various functions of architect, engineer, planner, designer, builder, contractor, insuror, realtor and lender on said house, thereby exercising complete and total dominion and control over every facet of construction." (Emphasis added).
In Hamilton Fixture Company, Inc. v. Anderson, 285 So.2d 744 (Miss. 1973), the Andersons, as owners, sued the heating contractor who had installed a humidifier in their new home. Excessive moisture had caused severe property damage and they *473 sued under the rule of strict liability in tort. This Court affirmed a judgment in favor of the home owners against the heating contractor, holding under the authority of State Stove that the heating contractor was strictly liable in tort to the home owners. In Hamilton we said:
"We are of the opinion that State Stove Manufacturing Company v. Hodges, 189 So.2d 113 (Miss. 1966), disposes of this issue. We there held that strict liability in tort is not dependent upon either warranty or negligence for its existence. We adopted the standards set forth in Section 402A of the American Law Institute Restatement of Torts (Second) insofar as it applies to a manufacturer of a product and to a contractor who builds and sells a house with the product in it." 285 So.2d at 746-747 (Emphasis added).
Thus, we have held that:
(1) A builder, Yates and Gary, is strictly liable in tort for the faulty installation of a water heater in a home when property damage is caused thereby (State Stove);
(2) A heating contractor is strictly liable in tort when a humidifier is installed in a home and property damage results when the humidifier doesn't perform as designed (Hamilton);
(3) A pickup truck manufacturer is strictly liable for injuries caused by a latent defect in the wiring system of a truck [Ford Motor Co. v. Cockrell, 211 So.2d 833 (Miss. 1968)]; or in the steering mechanism and chassis assembly of a truck [Ford Motor Co. v. Dees, 223 So.2d 638 (Miss. 1969), Ford Motor Co. v. Adams, 223 So.2d 638 (Miss. 1969)];
(4) A bottler is strictly liable for injuries caused by a defective bottle [Early-Gary, Inc. v. Walters, 294 So.2d 181 (Miss. 1974), Falstaff Brewing Corp. v. Williams, 234 So.2d 620 (Miss. 1970)]; and
(5) A manufacturer of a tractor is strictly liable for injuries caused by a defective safety switch [Ford Motor Co. v. Matthews, 291 So.2d 169 (Miss. 1974)].
I can't distinguish the case at bar from the above cases which we have already decided. For the last eight years, we have charted a steadfast and consistent course and have traveled a very considerable distance along this course.
In my opinion, we must either reverse State Stove, Hamilton, and all the others, and beat a hasty retreat back to 1965, the period before State Stove, or we must reverse the holding of the trial court in sustaining a demurrer to the declaration of the plaintiffs.
GILLESPIE, C.J., and SUGG, J., join in this dissent.