TRIPLETT *v.* AMERICAN CREOSOTE WORKS, INCORPORATED

No. 43182 February 1, 1965 171 So. 2d 342

728

*J. P. Coleman,* Ackerman; *J. Hoy Hathorn,* Louisville, for appellant.

*Thomas A. Bell, Daniel, Coker & Horton,* Jackson, for appellee.

KYLE, P. J.

This case is before us on appeal by Cleveland Triplett, plaintiff in the court below, from a judgment of the Circuit Court of Choctaw County sustaining the demurrer of American Creosote Works, Incorporated, defendant in the court below, in an action for damages for personal injuries received by the plaintiff on March 7, 1961, as a result of a shock and burns suffered by the plaintiff when he came in contact with an electric power line which had fallen on or across a public road

known as the Liberty Cutoff Road in Winston County, about ten miles southwest of the City of Louisville. The electric power line was owned and maintained by the East Mississippi Electric Power Association which was named a codefendant in the plaintiff's declaration, but after the filing of the plaintiff's declaration, the Power Association settled its case with the plaintiff.

The plaintiff's declaration charged that the high voltage line of the East Mississippi Electric Power Association involved in this case was constructed during the year 1948, and that the posts supporting the line were supplied by the defendant American Creosote Works, Inc., and were stamped with American Creosote Works' trade name and the date they were supplied, and that the posts had been processed and treated with creosote material by the defendant American Creosote Works.

The pertinent parts of the plaintiff's declaration alleged as grounds of liability on the part of American Creosote Works, Inc., are as follows: That common care and prudence required that the defendant, American Creosote Works, Inc., in treating, processing and furnishing the creosote poles used in constructing the high voltage uninsulated line running along the Liberty Cutoff Road, knowing that the poles would be used to support high voltage uninsulated electric lines, which at times would cross over and above public roads and highways, see that the materials, creosote and wood were of sufficient quality and stability that the poles would perform the function for which they were intended and would sustain and support the high voltage uninsulated electric power wires in such manner as to protect the traveling public having occasion to use the road, one of which was the plaintiff.

The plaintiff further alleged in his declaration "that notwithstanding the said duties and said facts, the said defendant, American Creosote Works, Inc., did negli-

gently and carelessly furnish creosoted poles used in the construction and maintenance of the high voltage uninsulated electrical line running along the Liberty Cutoff Public road, that failed to meet said requirements in that they were of poor quality, and had not been impregnated with creosote, or the said material was of such poor quality that it did not preserve said wood, or that the wood was of such poor quality that it could not be preserved, so much so that the offset post that fell across the Liberty Cutoff Road causing the injuries herein complained of was rotten and decayed, and bits and pieces of said post fell and were shattered from said post like a rotten corn stalk broken apart, and a causal examination of the same showed that said post was rotten and decayed and did not contain creosote as represented and warranted, and that as a direct and proximate result of such negligence and carelessness and failure the plaintiff did sustain the injuries herein complained of.''

The allegations of the declaration charging negligence on the part of the East Mississippi Electric Power Association will be referred to later.

The defendant, American Creosote Works, Inc., filed a demurrer to the plaintiff's declaration alleging as grounds therefor the following:

1. That the declaration failed to state a cause of action against the defendant, American Creosote Works, Inc.

2. That the plaintiff's cause of action against the defendant, American Creosote Works, if any, was barred by the statute of limitations.

3. That the declaration alleged matters ex delicto and matters ex contractu, which constituted a misjoinder of causes of action.

4. That there was a misjoinder of parties defendant in the declaration.

5. That the plaintiff did not allege any privity of contract between him and the defendant.

6. That the plaintiff alleged in his declaration an efficient, independent, intervening cause of action against the codefendant Power Association which insulated the negligence, if any, of the defendant American Creosote Works.

The demurrer was sustained on the ground that the declaration stated no cause of action against the American Creosote Works, Inc:, and on the ground that the declaration did not allege privity of contract between the plaintiff and the defendant. The demurrer was overruled as to all other grounds.

The appellant has assigned and argued two points as grounds for reversal of the judgment of the lower court.

It is first argued that the declaration stated a valid cause of action in tort for the negligent manufacture and sale of a product imminently dangerous to others, and that under the facts alleged in the declaration privity of contract was wholly immaterial on the issue as to the defendant's liability; and the appellant's attorneys cite in support of their contention on that point Holmes v. Strider, 186 Miss. 380, 189 So. 519 (1939), in which this Court held that, while a contractor for the reconstruction of a highway bridge was under no duty to maintain the work performed, he was not relieved from liability to a traveler for personal injuries resulting from the negligent manner in which the work was done. The appellant's attorneys also cite in support of their contention that the declaration stated a valid cause of action in tort for the negligent manufacture and sale of an imminently dangerous product the landmark opinion of Justice Cardozo in MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F 696, Ann. Cas. 1916C 440 (1916).

It is next argued that, if the court should be of the opinion that a defective electric light pole, as a matter of law, cannot be classified as an imminently dangerous manufactured product, the court should hold, as many

courts have held during the last three decades, that, in a tort action for negligence against a manufacturer or supplier, the question whether or not privity of contract existed between the plaintiff and the defendant is wholly immaterial, and that the liability of such manufacturer or supplier should be made to rest upon traditional principles of tort liability, as set forth in Carter v. Yardley & Co., 319 Mass. 92, 64 N.E. 2d 693, 164 A.L.R. 559 (1946), in which the court abandoned entirely the general rule requiring privity of contract in tort actions against a manufacturer or seller for injury caused by the manufactured product.

We think there was no error in the action of the trial judge in sustaining the demurrer to the appellant's declaration.

The facts alleged in the plaintiff's declaration, if proved, in our opinion, were not sufficient to support a finding that the pole involved in this case was an imminently dangerous product at the time it was sold to the Power Association, or a finding that the alleged negligence of the defendant in failing to furnish a creosoted pole of greater durability or more completely immune from decay and rot, constituted the proximate cause of the plaintiff's injury.

 █ Proof that a product which has caused injury is within the imminently dangerous product exception to the rule requiring privity of contract requires that it be shown that the product, at the time it was sold by defendant (whether the defendant is the manufacturer or a seller of the product) was in such condition that injury from its use was not a mere possibility, but a probability. See Annot., Product Causing Injury, 74 A.L.R. 2d 1111, 1167 (1960), and cases cited.

In Hursch American Law of Products Liability, Privity section 6:31 (1961), it is said:

> The time when the accident and resulting injury occurred, whether soon or long after the sale and

delivery of the article causing the injury, is manifestly of importance in relation to the question of its known imminently dangerous quality when sold and delivered. Use of a product for a considerable amount of time prior to the occurrence of any product-caused injury has been viewed by the courts as indicating that the product was not imminently dangerous when sold; on the question whether such an indication is controlling as to the fact of its imminently dangerous character, the courts are in some disagreement. See also Gorman v. Murphy Diesel Co., 42 Del. 149, 29 A. 2d 145 (1942); Willey v. Fyrogas Co., 363 Mo. 406, 251 S.W. 2d 635 (1952).

In the case of Lynch v. International Harvester Company of America, 60 F. 2d 223 (10th Cir. 1932), the Court held that the manufacturer of a threshing machine was not liable for injuries sustained by the owner five years after the original sale and after the machine had been owned and operated by others, when an iron covering over the revolving cylinder gave way, causing the owner's foot to be mangled. The Court in its opinion said:

> The most serious and obvious reason against the appellant's right of recovery is the fact that the injury did not occur until after five years use of the machine, and during that time operators had stepped on and walked over the covering in safety, as the complaint expressly admits. These facts, it seems to us, are a conclusive denial and contradiction of the allegation that the machine was imminently dangerous to life and limb when defendant sold it.

In Gorman v. Murphy Diesel Co., 20 A. 2d 145 (Del. 1942), the Court held that the lapse of time between the sale and delivery of an article alleged to have been imminently dangerous and the injury allegedly resulting from the negligent construction thereof is of importance upon the question of its known imminently dangerous

quality when sold and delivered, as respects the liability of the manufacturer to injured persons with whom the manufacturer had no contractual relation.

In Auld v. Sears Roebuck & Co., 261 App. Div. 918, 25 N.Y.S. 2d 491 (1941), affirmed without opinion, 288 N.Y. 515, 41 N.E. 2d 927 (1942), the record showed that a wringer on an electric washing machine suddenly swung around and struck the plaintiff. An examination of the machine after the accident showed that the wringer had done so because a pin which held the mechanism in place had become worn with use in the long period of time the machine had been used. The Court, in holding that no liability attached to either the manufacturer or the retailer under such circumstances, in its opinion said:

> There is no duty upon a manufacturer to furnish a machine that will not wear out. Common sense and every-day experience teaches us that machinery will wear out. The remedy remains in having the machinery inspected periodically so that worn parts may be replaced.

██ ██ In the case that we have here it cannot be reasonably contended that a preservative applied to a pole such as that involved in this case would make it indestructible or prolong its life indefinitely. It is common knowledge that telephone poles and electric power line poles do rot and decay after long exposure to the elements, and that proper maintenance of telephone lines and electric power lines requires periodical inspection of the poles and replacement of poles which have become weakened because of rot and decay. The declaration does not allege that the rot and decay referred to existed at the time the pole was sold to the Power Association; and the fact that the pole involved in this case lasted for a period of thirteen years, in our opinion, demonstrates that the pole was not imminently dangerous when delivered to the Power Association in 1948.

■■ ■ We also think that the declaration failed to allege facts sufficient to show that the alleged negligence of American Creosote Works constituted the proximate cause of the plaintiff's injury. On the contrary the declaration, in our opinion, shows clearly that the negligence of the Power Association in failing to exercise that degree of care which the law requires in the construction and maintenance of its power lines was an efficient intervening cause of the plaintiff's injury, which insulated the negligence, if any, of American Creosote Works in failing to impregnate the pole involved in this case with a sufficient quantity of creosote to preserve the wood for a longer period of time.

The plaintiff alleged in his declaration that it was the duty of the Power Association, in the construction of its high powered lines, to place sufficient poles along the route of its lines to support the wires and avoid excessive distances between spans, and to brace or guy-wire the offset poles in order to take care of the weight and natural tendency of the wires to pull back to a straight line, and to use poles of sufficient quality, strength and stability to support the wires; and also to make periodic and regular inspections of its high powered lines in order to maintain the same in a safe manner and to see that they were in good condition, and to see that the poles were in good condition and sound.

The plaintiff further alleged that, notwithstanding that duty, the Power Association "* * * did negligently and carelessly construct, operate and maintain said high voltage electrical lines and wires transmitting 7200 volts of electricity over, above, along and across the Liberty Cutoff public road, with less than 20 feet of clearance or elevation of the wire over the traveled portion of the road, and with the posts as far as 230 yards between spans, and 181 yards, which were the distances on either side of the fallen post causing the injuries in this case, which distances were far in excess of that required by

common care and prudence; and without bracing or guy-wiring the offset post in order to take care of the excessive weight and natural pull of the wire; * * * that said defendant negligently and carelessly failed to make periodic and regular inspections of its facilities at said point, that any kind of inspection, however, slight, could not have helped but reveal that the post that fell into the Liberty Cutoff road was decayed and rotten, and of such poor quality, strength and stability that it could not support the high voltage electrical wires; * * * that as a result of said negligence and failure, the defendant, East Mississippi Electric Power Association, did thereby cause the plaintiff to sustain the injuries herein complained of.''

■■ ■ The Power Association was required to exercise the highest degree of care in the construction and maintenance of its high powered lines. The Power Association had exclusive possession and control of the poles which it purchased from the appellant after they were delivered to the Association in 1948, and was charged with the duty of making a proper inspection of the poles before using them and of making regular inspections of the poles after the line had been completed and made ready for use. The negligence of the Power Association in failing to make periodic inspections of the pole involved in this case after it was installed, and in failing to replace the pole after it showed signs of decay was, in our opinion, the sole proximate cause of the plaintiff's injuries.

For the reasons stated above the judgment of the lower court sustaining the demurrer to the plaintiff's declaration is affirmed.

Affirmed.

*Ethridge, Gillespie, Brady and Patterson, JJ.,* concur.