189 So.2d 113 (1966)
STATE STOVE MANUFACTURING COMPANY et al.
v.
Herbert H. HODGES et ux.
No. 44023.
Supreme Court of Mississippi.
July 8, 1966.
*114 Butler, Snow, O'Mara, Stevens & Cannada, Lawrence J. Franck, Barnett, Montgomery, McClintock & Cunningham, Jackson, for appellants.
Threadgill & Hicks, W.H. Jolly, Columbus, for appellees.
ETHRIDGE, Chief Justice.
Yates and Gary, contractors, built a home for Herbert H. and Frances Hodges in Webster County, west of Eupora, for a *115 contract price of $11,600. The contractors, who turned the house over to the Hodges in late November 1962, installed in it an electric hot water heater, manufactured by appellant, State Stove Manufacturing Company of Ashland City, Tennessee, which sold the heater to Orgill Brothers, a Memphis wholesaler, in a cardboard container. Orgill Brothers in turn sold it to Yates and Gary, who were both contractors and operators of a hardware store.
On July 26, 1963, about eight months after they had moved into the house, the Hodges and their three children left on a trip to visit relatives in Arkansas. Several hours later, in the afternoon, the electric water heater exploded and substantially destroyed the house and all personal property in it. The two thermostats had locked or frozen in the "on" position. The water heater was found in a field 200 feet from the residence.
The Hodges brought this attachment action in the Chancery Court of Hinds County against State Stove Manufacturing Company (called State Stove), the manufacturer, and Yates and Gary, the contractors. The chancery court dismissed with prejudice the suit against Yates and Gary, finding there was no causal connection between the explosion and "the way that the contractors installed the water heater." The suit was filed on the theory of negligence, the chancellor said, solely by installation of the pressure relief valve in the cold water instead of the hot water line. He held that installation in the cold water line was proper.
As to the manufacturer, the court found: State Stove installed in the tank a plastic dip tube, running from the top to near its bottom, for insertion of cold water. The two thermostats, installed by State Stove, stopped working, and the only safeguard which State Stove took against excessive heat was the thermostats. The heat continued to mount until the plastic dip tube "fused and disintegrated to a point where cold water could not get into the water tank," and stopped up the valves and pipes, thus causing the explosion. The court concluded that the manufacturer was negligent in construction of the water heater. It also said the doctrine of res ipsa loquitur applied. The decree awarded damages to the Hodges against State Stove for destruction of their house in the amount of $10,400 (after deducting salvage value). He also gave $500 nominal damages for destruction of personal property, thus giving the Hodges a decree against State Stove for $10,900, from which this appeal was taken by State Stove. The Hodges appeal from the dismissal of their suit against Yates and Gary.

I.
Appellant contends that there was no privity of contract between it and the Hodges, and that the manufacturer of an appliance such as a hot water heater is not liable to the ultimate purchaser in the absence of some contractual relationship between them. Hence the first issue is whether privity of contract is necessary. We conclude it is not.
The history of the now universally rejected doctrine of privity of contract began in 1842 in the English case of Winterbottom v. Wright, 10 M. & W. 109, 152 Eng.Rep. 402 (1842). Subsequently the courts began developing several exceptions which whittled away the general rule derived from the erroneously supposed holding of Winterbottom v. Wright. For example, if the seller knew the chattel was dangerous for its intended use and failed to disclose that fact to the buyer, he became liable to a third person injured by such use. Second, liability existed where the chattel was furnished for use on the defendant's premises, treating the user as an invitee. The third was the most important exception, holding the seller liable to a third person in the preparation or sale of an article imminently or inherently dangerous to human safety. In 1916 Judge Cardozo, in MacPherson v. Buick Motor Company, held, in a suit against the manufacturer of *116 an automobile with a defective wheel, that the maker was liable for negligence. By placing the car on the market, it assumed a responsibility to the consumer, resting not on contract but upon the relation arising from the purchase, together with the foreseeability of harm if proper care was not used. 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696 (1916); Prosser, Torts 658-661 (3d ed. 1964).
Prosser summarizes the effect of MacPherson in subsequent cases in this way:
This decision found immediate acceptance, and at the end of some forty years is universal law in the United States, with the barely possible but highly unlikely exception of Mississippi. Massachusetts, which was one of the last jurisdictions to capitulate, has said that "The MacPherson case caused the exception to swallow the asserted general rule of nonliability, leaving nothing upon which that rule could operate." Some of the courts have continued to speak the language of "inherent danger," but it seems clear that this now means nothing more than that substantial harm is to be anticipated if the chattel should be defective. * * * It is certainly the prevailing view that it extends to any product whatever which, if in fact negligently made, may reasonably be expected to be capable of inflicting injury. * * *
The conclusion is clear that the duty extends to any one who may reasonably be expected to be in the vicinity of the chattel's probable use, and to be endangered if it is defective. * * *
Likewise the liability has been extended to damage to other property; and it is now generally agreed that the manufacturer is responsible for negligence in the sale of goods, such as animal food, which involve no recognizable risk of personal injury, and are foreseeably dangerous only to property. Prosser, Torts at 661-663.
Privity of contract between a consumer of a product and its manufacturer has not only been abandoned by every State in the Union, except Mississippi, but it has no rational basis for continuance in such an action in this jurisdiction. The manufacturer, by placing a chattel or product upon the market, assumes a responsibility to the consumer, resting not upon the contract but upon the relation arising from his purchase, together with the foreseeability of harm if proper care is not used. Hence it is appropriate and necessary, in accord with the universal rule elsewhere, that we hold this duty is one imposed by the law because of the defendant's affirmative conduct, which he should know to be likely to affect the interest of another. The rule which we adopt extends to any product which, if in fact negligently made, may reasonably be expected to be capable of inflicting injury. Privity of contract is not necessary in a suit by a consumer against a manufacturer. See Prosser, Torts, 658-672 (3d ed. 1964); Gillam, Products Liability in a Nutshell, 37 Ore.L.Rev. 119, 128-130 (1958); Wade, Strict Tort Liability of Manufacturers, 19 Sw. L.J. 5 (1965).
Ford Motor Company v. Myers, 151 Miss. 73, 117 So. 362 (1928), involved a suit by the purchaser of a truck with a defectively made cuff which broke, causing the truck to become unmanageable and plunge into a ditch, killing the owner. It was said that Myers had no contractual relation with Ford Motor Company, but was a remote vendee; and an automobile was not a dangerous instrumentality. Privity of contract lacking, no action lay against the manufacturer.
However, in several cases beginning in 1954, this Court expressly pretermitted the question of whether privity was necessary in a suit against a manufacturer, but indicated that requirement might be rejected. E.I. DuPont de Nemours & Co. v. Ladner, 221 Miss. 378, 73 So.2d 249 (1954), was a suit by Ladner against DuPont for damages to his dairy herd as the result of feeding soybean meal processed with a chemical *117 compound manufactured by DuPont. A judgment for plaintiff was reversed. The Court discussed the "decisions of many courts" that a person who has had no direct contractual relation with the manufacturer may recover against him for negligence. It pretermitted the question of whether the "rule of legal liability" applied in suits against manufacturers of foods and beverages intended for human consumption should be applied to a manufacturer of animal food. 221 Miss. at 399, 400, 73 So.2d at 254, 255. It was held that the proof failed to show that DuPont's negligence was the proximate cause of injury to plaintiff's cattle; that by letter and in person DuPont warned the processor of the cattle feed of the dangers incident to the use of this chemical compound before the cattle feed was manufactured and sold to a retailer; and the processor's negligence was the intervening, sole proximate cause of plaintiff's damages.
Cox v. Laws, 244 Miss. 696, 145 So.2d 703 (1962), was a suit for the wrongful death of a man, who died within a few minutes after using penicillin ointment on a wound, resulting in an anaphylactic reaction to the ointment. A demurrer to the declaration was sustained, but on appeal this was reversed and the cause remanded. The declaration stated a cause of action, charging a sale in violation of law without a prescription. The opinion reviewed the history of the privity of contract rule, observed that a majority of the courts have abandoned it, and numerous exceptions have been engrafted on it; but it was said that it was not necessary at that time to overrule former opinions requiring privity in order to decide the case.
Harrist v. Spencer-Harris Tool Company, 244 Miss. 84, 140 So.2d 558 (1962), was an action for personal injuries allegedly caused by the faulty manufacture by defendant of steps on an oil rig. Suit was against the manufacturer and dealer, whose demurrers were sustained. The Court referred to the common-law, privity-of-contract rule, and the "dictum in the opinion" in Ladner. Numerous articles on the question were cited, and it was said:
We find, however, that it is not necessary to pass upon or disturb the former opinions of this Court in order to reach a decision in this case.
Assuming, arguendo, (but not deciding this point at this time), this Court may ultimately adopt the so-called modern concept that a person who has no contractual relations with a manufacturer may recover for injuries caused by negligence of the manufacturer, nevertheless, in this case, we would be required to affirm the trial court because the alleged defects are not considered to be latent or concealed. If we assume there were defects, we think they were apparent and obvious to a casual observer. (244 Miss. at 94, 140 So.2d at 561).
In Triplett v. American Creosote Works, 251 Miss. 727, 171 So.2d 342 (1965), plaintiff sued the supplier of an electric power line pole for damages resulting when the pole broke, permitting plaintiff to come in contact with an electric line. A judgment sustaining a demurrer to the declaration was affirmed, on the grounds that the pole was not an imminently dangerous product at the time it was sold to the power association, some fifteen years earlier, and that the alleged negligence of American did not constitute the proximate cause of plaintiff's injury, which, in fact was the negligence of the power association in construction of its power line. This was the efficient, intervening cause.
Moreover, it has long been established in food and beverage cases in this State that privity of contract is not an essential part of a cause of action against a manufacturer. Coca-Cola Bottling Works v. Lyons, 145 Miss. 876, 111 So. 305 (1927), held that there was an "implied warranty" that the bottled drink was pure and wholesome, and plaintiff need only show that the glass was in the bottle when it left the factory, the consumer had rightful possession *118 of it, and he received injury from drinking it with glass in it. Biedenharn Candy Co. v. Moore, 184 Miss. 721, 186 So. 628 (1939).
In summary, Ford Motor Company v. Myers expressly required privity of contract in a suit by a consumer against a manufacturer. It is hereby overruled. E.I. DuPont de Nemours & Co. v. Ladner, Cox v. Laws, Harrist v. Spencer-Harris Tool Company, and Triplett v. American Creosote Works were all decided on grounds not connected with the obsolete privity-of-contract doctrine. In fact, they all rendered caveats to the applicability of this doctrine in Mississippi.

II.
Since privity of contract is not essential in a suit by the consumer against the manufacturer, the next issues are (a) the basis and theory of liability of a manufacturer to a consumer for a defective product, and (b) whether the requirements of the appropriate theory exist in this action by the Hodges.
After careful consideration of the precedents in this and other States, the history of these issues, and the many considerations pertinent to them, which are discussed subsequently, we conclude that the appropriate standards of responsibility are well stated in Section 402A of the American Law Institute's Restatement of Torts (Second), which we adopt insofar as it applies to a manufacturer of a product and to a contractor who builds and sells a house with the product in it. It states:
Special Liability of Seller of Product for Physical Harm to User or Consumer 
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
The foregoing rule is not exclusive. It does not preclude liability based upon the alternative ground of negligence of the manufacturer or seller, where such negligence can be proved. Restatement (Second), Torts at 348.
An analysis of the doctrine of strict liability in tort is pertinent at this point, before we consider the liability vel non of State Stove, and of Yates and Gary.
Since 1927 the manufacturer of food and drink has been held strictly liable to the consumer in Mississippi. This is also the rule in at least twenty-eight other states. Wade, 19 Sw. L.J. at 11. Coca-Cola Bottling Works v. Lyons, 145 Miss. 876, 111 So. 305 (1927), was a suit by Mrs. Lyons for personal injuries received when she drank a bottle of Coca-Cola purchased for her by a companion at a drug store. It contained broken glass, from which she received internal injuries. The Court said it "would discard any question" with reference to negligence. The case was grounded upon "the theory of the breach of an implied warranty," and "three things only are to be ascertained, namely: (1) Was the glass in the bottle when it left the factory and was offered to the public? (2) Did the consumer have title and rightful possession of the bottle? (3) Did the consumer receive injury from drinking the Coca-Cola with the glass in it?" 145 Miss. at 882-883, *119 111 So. at 306. It was further said that no privity of contract was necessary. Since it was undisputed that the bottle was sealed by the manufacturer, "the glass must have been in the bottle before it left the factory. * * * Consequently the only thing left to the jury to decide was whether or not there was in fact glass in the bottle of Coca-Cola which Mrs. Lyons drank * *."
The early food and beverage cases, Prosser says, "suggested nothing very much in the way of a legal theory to support strict liability. * * *" However, he states:
In 1927 the Mississippi court came up with the idea of a "warranty" running with the goods from the manufacturer to the consumer, by analogy to a covenant running with the land. This found general acceptance, and all of the later cases have gone upon the basis of warranty, although it is now generally agreed that it is one made directly to the consumer. Prosser, Torts 678 (3d ed. 1964); Coca-Cola Bottling Works v. Lyons, 145 Miss. 876, 111 So. 305 (1927).
Nevertheless, recognized scholars in this field of law have concluded that "the concept of warranty has involved so many major difficulties and disadvantages that it is very questionable whether it has not become rather a burden than a boon to the courts and what they are trying to accomplish." Prosser, at 679. Breach of warranty is associated with contract law, and traditionally requires some promise or undertaking express or implied. The idea of a warranty introduces quite unnecessary complications into the liability of a manufacturer to a consumer. In the absence of privity, the liability is in tort and not in contract, and a concept of warranty from the contract law of sales is irrelevant. The conclusions are particularly pertinent in this jurisdiction, since the doctrine of a strict liability of the manufacturer to the consumer, without negligence, was developed here beginning in 1927 in Coca-Cola Bottling Works v. Lyons and subsequent cases. Moreover, sound reasons for imposing strict liability on the manufacturer have been fully stated and analyzed in many cases and secondary authorities. See Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099 (1960); 2 Harper & James, Torts §§ 28.15-28.16 (1956); Restatement (Second), Torts 348-358 (1965); Prosser, Torts 673-674 (3d ed. 1964).
The rationale of this rule is well stated in Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal. Rptr. 697, 377 P.2d 897 (1962). Plaintiff was injured while using a power tool, given to him by his wife, who had purchased it from a retailer. The evidence showed that there were inadequate set screws installed by the manufacturer, which permitted the lathe to move away from the piece of wood, allowing it to fly out of the lathe and hit plaintiff on the head. Affirming a judgment for plaintiff against the manufacturer, the California Supreme Court said:
A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being. Recognized first in the case of unwholesome food products, such liability has now been extended to a variety of other products that create as great or greater hazards if defective. * * *
Although in these cases strict liability has usually been based on the theory of an express or implied warranty running from the manufacturer to the plaintiff, the abandonment of the requirement of a contract between them, the recognition that the liability is not assumed by agreement but imposed by law * * *, and the refusal to permit the manufacturer to define the scope of its own responsibility for defective products * * * make clear that the liability is not one governed by the law of contract warranties but by the law of strict liability in tort. Accordingly, rules defining and governing warranties that were developed to meet *120 the needs of commercial transactions cannot properly be invoked to govern the manufacturer's liability to those injured by their defective products unless those rules also serve the purposes for which such liability is imposed.
The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves. Sales warranties serve this purpose fitfully at best. * * * Implicit in the machine's presence on the market, however, was a representation that it would safely do the jobs for which it was built. Under these circumstances, it should not be controlling whether plaintiff selected the machine because of the statements in the brochure, or because of the machine's own appearance of excellence that belied the defect lurking beneath the surface, or because he merely assumed that it would safely do the jobs it was built to do. It should not be controlling whether the details of the sales from manufacturer to retailer and from retailer to plaintiff's wife were such that one or more of the implied warranties of the sales act arose. * * * "The remedies of injured consumers ought not to be made to depend upon the intricacies of the law of sales." * * * To establish the manufacturer's liability it was sufficient that plaintiff proved that he was injured while using the Shopsmith in a way it was intended to be used as a result of a defect in design and manufacture of which plaintiff was not aware that made the Shopsmith unsafe for its intended use. (27 Cal. Rptr. at 700-701, 377 P.2d at 900-901).
A few of the many cases applying these principles are: Spence v. Three Rivers Builders & Masonry Supply, 353 Mich. 120, 90 N.W.2d 873 (1958) (cinder building blocks caused user's home to collapse); Goldberg v. Kollsman Instrument Corp. & American Airlines, 12 N.Y.2d 432, 240 N.Y.S.2d 592, 191 N.E.2d 81 (1963) (manufacturer of airplanes); Deveny v. Rheem Manufacturing Co., 319 F.2d 124 (2d Cir.1963) (gas hot water heater); Vandermark v. Ford Motor Company, 61 Cal.2d 256, 37 Cal. Rptr. 896, 391 P.2d 168 (1964) (power steering); Morrow v. Caloric Appliance Corp., 372 S.W.2d 41 (Mo. 1963) (stove).
Dean John Wade summarizes the present state of law in this way:
It has been only a half-dozen years since the first decision was rendered applying strict liability to articles other than food products. Already there are holdings or other indications in about half of the states that strict liability will extend beyond food products. A movement this rapid is almost completely unprecedented and is indicative of a strong trend amounting to a groundswell. When this development is combined with the authority of the Restatement and of the numerous writers in the field, the future state of the law becomes quite clear. Wade, Strict Tort Liability of Manufacturers, 19 Sw. L.J. 5, 12 (1965).
Other recent decisions applying strict liability are: Seely v. White Motor Company, 63 Cal.2d 1, 45 Cal. Rptr. 17, 403 P.2d 145 (1965); Suvada v. White Motor Company, 32 Ill.2d 612, 210 N.E.2d 182 (1965); Cintrone v. Hertz Truck Leasing and Rental Service, 45 N.J. 434, 212 A.2d 769 (1965); Santor v. A & M Karagheusian, Inc., 44 N.J. 52, 207 A.2d 305 (1965); Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 16 A.2d 69, 75 A.L.R.2d 1 (1960); Ford Motor Co. v. Lonon, 398 S.W.2d 240 (Tenn. 1966). See Restatement (Second), Torts, Appendix, § 402A, pp. 1-8 (citing many cases); cf. Hursh, Products Liability §§ 20.12-20.15 (water heaters, negligence).
The extent of strict liability of a manufacturer for harm caused by his products is not that of an insurer. It is strict in the sense that there is no need to prove that the manufacturer was negligent. If *121 the article left the defendant's control in a dangerously unsafe condition, or was not reasonably safe, or was unsafe for its intended use, the defendant is liable whether or not he was at fault in creating that condition, or in failing to discover and eliminate it. Ordinarily the phrase "defective condition" means that the article has something wrong with it, that it did not function as expected. However, where the article was made as intended, and yet proves to be not reasonably safe, the phrase "defective condition" has no independent meaning. Wade, 19 Sw. L.J. at 15. The issue is whether the product is "unreasonably dangerous" or not reasonably safe. As was said in Morrow v. Caloric Appliance Corp., 372 S.W.2d 41, 55 (Mo. 1963), it should be "fit and reasonably safe for use by the `consumer' when used in the manner and for the purpose for which they are manufactured and sold * * *." In other words, the Restatement rule of Section 402A "applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him," or not reasonably safe. Restatement (Second), Torts, Section 402A, comment g.
The manufacturer is liable strictly in tort only if (a) he puts on the market a product which is not reasonably safe, and (b) the plaintiff is injured as a result of a contemplated use of it. The action is different from negligence mainly in the element of scienter: Plaintiff will not need to prove either that defendant negligently created the unsafe condition of the product or that he was aware of it. Wade, 19 Sw. L.J. at 15, 25. Strict products liability does not require a perfectly safe product. A simple instrument like a hammer or an axe can injure any one if used unskillfully. But on the other hand, a manufacturer is liable if it puts on the market a product which is not reasonably safe and the plaintiff is injured as the result of a contemplated use of it. Moreover, whether a product is reasonably safe or not is a flexible standard responsive to the facts of each case. Wade, 19 Sw. L.J. at 17. It is a question of fact whether the particular article involved was reasonably safe when it left the control of the manufacturer.

III.
A majority of the Judges, being Judges Gillespie, Jones, Brady, Smith and Robertson, are of the opinion, and the Court holds that State Stove is not liable to complainants. Hence the decree of the chancery court is reversed in part, and judgment is rendered here for appellant, State Stove. Four of the Judges, being the writer of this opinion and Judges Rodgers, Patterson and Inzer, are of the opinion that State Stove is liable. That view is discussed in a separate opinion, dissenting only to this part of the decision.
The Court holds that State Stove has no liability here, under Restatement section 402A, (1) because the water heater as manufactured was not in "a defective condition unreasonably dangerous to the user or consumer or to his property"; and (2) because it was not expected to and did not reach the Hodges "without substantial change in the condition in which it * * * (was) sold." (3) Further, the negligent failure of Yates and Gary, through their agent Pittman, to follow the instructions of the manufacturer in installing the water heater, by failing to use a temperature relief valve, was the intervening, sole proximate cause of the explosion.
State Stove installed the two thermostats controlling the two heating units in the water heater at its factory, and the plastic dip tube or pipe carrying cold water from the top to the bottom of the tank. Neither the thermostats nor the plastic dip tube were manufactured by State Stove. It purchased them from other manufacturers and installed them at its factory. After completion of the manufacturing process by State Stove, the appliance was then sealed or packaged in a cardboard container, and sold to Orgill Brothers, a wholesaler. Orgill *122 shipped the enclosed package containing the heater to the contractors, Yates and Gary, who built the house and installed it in the residence.
Yates and Gary hired a plumber, Pittman, to perform the actual installation. Pittman was an agent of Yates and Gary and not an independent contractor. Sears, Roebuck & Company v. Creekmore, 199 Miss. 48, 23 So.2d 250 (1945). Moreover, installation of the heater was a nondelegable duty of the contractors. Weldon v. Lehmann, 226 Miss. 600, 84 So.2d 796 (1956); Federal Compress & Warehouse Co. v. Swilley, 252 Miss. 103, 171 So.2d 333 (1965).
The contractors furnished Pittman with a pressure relief valve and a check valve to be installed with the water heater. The check valve was inserted on the cold water line. It precluded the water from flowing back from the heater to the source of supply, a well and electric water pump. The pressure relief valve was installed in the cold water line at a point underneath the house. The record reflects that installation in the cold water line, rather than the hot water line as asserted by complainants, was proper.
No plumbing code in Webster County required a temperature relief valve, in addition to the pressure valve. At the time of this installation plumbers in that area customarily were using only pressure valves, and were not using temperature valves, although since then they have been using them. However, the FHA, the VA, and the National Plumbing Code require both.
State Stove's set of instructions enclosed with the heater directed installation of a combination temperature and pressure relief valve. It contained detailed drawings showing the way to install the prescribed combination valve. The warranty stated that it would not be effective unless the heater "was equipped with a suitable temperature and pressure relief valve." However, Pittman did not install a temperature valve on the hot water heater. Although he did not read these particular instructions, he admitted that he knew they directed it.
As to the manufacturer, the chancery court found that the thermostats, installed by State Stove, failed to work. This caused the temperature in the tank to rise to a high point and caused the plastic dip tube in the tank, placed therein by the manufacturer, to fuse and disintegrate "to a point where cold water could not get into the water tank," and that the heater would not have exploded if the dip tube had not stopped up the valves and pipes of the heater. The trial court stated that "the company, knowing what might happen to the plastic dip tube, should have added some safeguards against the thermostats not working, in order to prevent the plastic dip tube from fusing and disintegrating, but they didn't. I hold that that was negligence in the manufacture of this hot water tank." It further held that the doctrine of res ipsa loquitur applied.
However, it is undisputed that, if Yates and Gary had followed the instructions of State Stove, the combination valve with a temperature control would have prevented the temperature in the tank from reaching the point where steam would be produced (312 degrees F.), when the explosion resulted, and where the dip tube would melt. The chancery court erred in not attaching significance to this important fact.
Further, the heater was not expected to and did not reach the Hodges "without substantial change in the condition in which" the manufacturer sold it. State Stove clearly directed the installer to place a combination valve on it. The evidence shows that manufacturers of water heaters commonly do not install such safety appliances, which are customarily and more conveniently installed by a plumber. Subsequent installation of safety valves by another is in this sense a substantial change in condition. In short, the heater was not used in the way it was intended to be used, as defined (for example) in Greenman v. Yuba Power Products.
*123 Moreover, there is no evidence to show that the heater, as manufactured by appellant, was in a defective condition and unreasonably dangerous. Thermostats are mechanical in nature, not safety appliances, and the evidence reflects the obvious fact that all mechanical devices may fail at one time or another. The mere fact that they locked in the "on" position does not suffice to show that the thermostats were defective when manufactured. Any mechanical contrivance may fail to work. Their failure to function after the lapse of seven months of use does not indicate a defect at the time the heater left the manufacturer. Foreseeability cannot be imputed to State Stove under these facts.
And finally, the failure of Yates and Gary to install the prescribed and required temperature relief valve, which would have prevented the explosion, was an intervening, sole proximate cause of the damages suffered by complainants. See Ford Motor Company v. Wagoner, 183 Tenn. 392, 192 S.W.2d 840, 852, 164 A.L.R. 364 (1946); Annot., 164 A.L.R. 371 (1946); Jones v. Hartman Beverage Co., 203 S.W.2d 166 (Tenn. Ct. App. 1946); Prosser, Torts § 51 (3d ed. 1964).
E.I. Du Pont de Nemours & Company v. Ladner, 221 Miss. 378, 73 So.2d 249 (1954), is directly in point on this issue. There the manufacturer of the chemical compound gave express notice to the processor not to use it for cattle feed. The processor ignored this warning, and its failure to heed it was the intervening, sole proximate cause of the purchaser's damages.

IV.
The Hodges took a concurrent direct appeal against Yates and Gary, the contractors, who were dismissed by the chancery court. It found Yates and Gary were not negligent in installing the pressure relief valve on the cold instead of the hot water line. The bill of complaint charged them with negligence in improperly placing the pressure valve in the cold water line. It further averred that Yates and Gary held themselves up to the public and complainants as being skilled and experienced general contractors, qualified to construct a dwelling and to install any and all appliances needed in it; and that they "were required to install the hot water heater of complainants in such a manner * * * as to not endanger the property, health, lives and safety of complainants. * * *" However, the bill averred also that as a result of the joint concurrent negligence of the defendants the explosion ensued and complainants' home was destroyed. It had a prayer for general relief.
The liability of Yates and Gary rests both upon negligence and also upon strict liability in tort, within the limitations defined above. The specific negligence alleged in the bill (installation of pressure relief valve in cold water line) does not preclude us from determining whether they are liable for negligence and strictly liable in tort. Under the prayer in the bill for general relief, complainants may have any other relief than that specifically prayed if it is within the scope of the facts of the bill, not inconsistent with its purpose, and cannot be said to surprise defendant. Griffith, Miss. Chancery Practice §§ 186, 187 (1950).
Yates and Gary, through Pittman, were negligent in failing to install a combination pressure and temperature valve in the water heater, Pittman knew the instructions directed this be done.
Yates and Gary were more than retailers and wholesalers. They not only sold the water heater to the Hodges, but they constructed the house for them and installed the heater in it. As installed by them, without a temperature valve, this product was in a defective condition and was not reasonably safe for its intended purpose. These contractors were engaged in the business of selling and installing such a product in homes constructed by them, and they expected it to reach the *124 user or consumer in that condition. So, they are also strictly liable in tort. Hence the chancery court erred in dismissing the action against Yates and Gary. That part of the decree is reversed and judgment is rendered here on liability and damages to the house against Yates and Gary.

V.
There is no substantial dispute in the record as to the damages to the house of $10,400. The trial court held that complainants suffered only nominal damages of $500 for the destruction of their household belongings and personal effects. It stated there was no rule or guide in the evidence by which it could ascertain damages to the personal property; that cost is a factor, but not the only one, and, since complainants failed to prove actual damages to personalty, they were entitled only to "nominal damages."
Complainants introduced in evidence photographs of the damages to the exterior and interior of their residence. Mr. Hodges testified that all personal belongings in the house were destroyed. Asked how he placed a valuation on these objects of $10,358.33, he said partly by memory, and where they didn't have records or receipts for the items, they compared it with other merchandise which would replace the given items. He then introduced in evidence a detailed itemization, reflecting cost and estimated depreciation of each item. On cross-examination, he said that they undertook to salvage the items of personal property which were usable, but they were very few. They did not have insurance on household furniture. He admitted that original cost did not represent the value of the articles at the time of the fire.
The general rule as to measure of damages for loss or conversion of, or injuries to wearing apparel or household goods is concisely summarized in an annotation in 63 A.L.R. 240 at 241, 254 (1929):
It is generally held that the amount of recovery for the loss or conversion of, or injury to, wearing apparel or household goods, is not limited to the price which could be realized by a sale in the market; but that the owner may recover the value of the goods to him, based on his actual money loss resulting from his being deprived of the property, or the difference in actual value caused by the injury, excluding any fanciful or sentimental values which he might place on them. (63 A.L.R. at 241).
In determining the measure of damages for the loss or conversion of, or injury to, wearing apparel or household goods, evidence of the cost of the articles when new, in connection with evidence of the wear and tear, the length of time they have been in use, their condition at the time of the loss or injury, the expense of replacing them with other goods of a similar kind and in a similar condition, and any other facts which will enable the jury to determine the worth of the goods to the owner at the time of the loss, is proper for the consideration of the jury. (63 A.L.R. at 254)
To the same effect are 22 Am.Jur.2d Damages § 150 (1965), and McCormick, Damages § 45 (1935). Apparently this jurisdiction has no decisions on the measure of damages to household goods and personal effects. Louisville & N.R. Co. v. Stewart, 78 Miss. 600, 29 So. 394 (1901), applied the rule of value to the owner for loss of an oil portrait. Austin v. Millspaugh, 90 Miss. 354, 43 So. 305 (1907), reversed an award for nominal damages only to an architect who lost at a hotel architectural drawings and plans. It applied the test of reasonable, just and fair value to the owner. See Annot. 12 A.L.R.2d 902 (1950).
Sears, Roebuck & Co. v. Creekmore, 199 Miss. 48, 23 So.2d 250 (1945), involved destruction by fire of a house and its contents, but the Court dealt principally with the before and after rule as to the house. The instructions gave no guidance to the jury as to a measure of damages. The *125 case was reversed and remanded on that issue only. It was indicated that an estimate of replacement costs may be relevant along with other factors. See Copiah Dairies, Inc. v. Addkison, 247 Miss. 327, 153 So.2d 689 (1963).
The undisputed evidence shows that the Hodges suffered considerably more than the merely nominal damages found by the chancery court, for loss of their personal property and household effects from the explosion. As to Yates and Gary, this case is remanded for ascertainment of damages to the household effects and personal property of complainant, in accordance with the above rules and standards.
In summary, on the direct appeal of State Stove Manufacturing Company, the decree is reversed and judgment is rendered here for that appellant. As to the appeal of Mr. and Mrs. Hodges from the decree dismissing Yates and Gary, the decree is reversed and judgment rendered here adjudicating liability of Yates and Gary for damages to the house of $10,400, and as to them the cause is reversed and remanded for the limited purpose only of determining the quantum of such personal property damages.
On direct appeal of State Stove Manufacturing Company, reversed and judgment rendered here for that appellant; on cross-appeal of the Hodges as to State Stove, affirmed; on direct appeal of the Hodges as to Yates and Gary, reversed and judgment rendered here for complainants against them as to liability and damages to house, and remanded solely for limited purpose of fixing damages to household effects and personal property.
All Justices concur, except ETHRIDGE, C.J., and RODGERS, PATTERSON and INZER, JJ., dissent in part, as to judgment rendered for State Stove Manufacturing Company.
ETHRIDGE, Chief Justice (dissenting in part):
The only point of difference among us lies in that part of the controlling opinion (Section III) which relieves State Stove Manufacturing Company of liability. The Court properly holds that State Stove's responsibility should be measured by Section 402A of the Restatement (Second) of Torts.
One question is whether the water heater as manufactured was in a defective condition unreasonably dangerous to or not reasonably safe for the consumer or his property. It is undisputed that the two thermostats, after only seven months of use, failed to work, and permitted the temperature to reach a high point, resulting in the explosion. It is unnecessary for complainants to prove, I think, specifically that the thermostats had some defective needle, screw, or other working part in them to come within this requirement. At this point in time, it is manifest that the thermostats were not reasonably safe, or were unsafe for their intended use. They failed to work after only seven months of use, when the express warranty of State Stove, not available here, was for ten years. It is not necessary to use res ipsa loquitur to conclude that the thermostats had something wrong with them, since they did not function as expected. By analogy to the law of sales, they were not fit and reasonably safe for use by the consumer.
The Court holds further that the water heater was not used in the manner for which it was manufactured and sold by State Stove, since the manufacturer directed installation of a combination pressure and temperature relief valve, and this was not done. Here an issue of policy arises which I think the Court must consider. The water heater purported to be, as packaged, a product usable for the purpose constructed, after installation of pipes. The thermostats were safety devices, it seems to me, although the Court holds they were not. They were *126 designed to control the temperature, just as much as a temperature and pressure relief valve would at a higher level. It is not unreasonable for the law to require a manufacturer of a product potentially dangerous, such as a hot water heater, to install on it at the factory safety devices, such as a combination temperature and pressure relief valve. The manufacturer is bound to be aware of the varieties of plumbers who install such appliances, and of the foreseeable nature of a failure of some plumbers in the fifty states to install specified safety devices. The effect of the controlling opinion's interpretation of the manufacturer's instructions and warranty is to shift from the manufacturer, who knows the problem and the potentialities of injury, the risk of such injury, and to transfer it to an innocent consumer who has no knowledge of the instructions or of the method of installation by a builder of his house. These practical factors should put on the manufacturer of a water heater the duty to install at the factory any reasonable safety appliances.
In short, the product as it left State Stove's factory was, in my opinion, in a defective condition unreasonably dangerous to the consumer, or not reasonably safe, or unsafe for its intended use. Certainly when it reached the ultimate consumer, the heater was in a condition not contemplated by him and not reasonably safe.
Closely related to that factor is the requirement that the product is expected to and does reach the consumer "without substantial change in the condition in which it is sold." The thermostats, which admittedly failed to work after only seven months of use, were not touched or changed in any way by the Hodges after they moved into the house. There was no change whatever in the condition in which they were sold by State Stove. Nor did the manufacturer expect them to be changed by the consumer. The record reflects that the company which manufactured thermostats, and sold them to State Stove, preset them at a given temperature.
It is not good law or sound judicial policy to permit a manufacturer to escape liability by delegating to an intermediary the duty to install safety devices to protect against defects and failures in the product, which the manufacturer by its own testimony admitted it knew could occur. The duty of a manufacturer of a product which may cause substantial harm to the consumer should include a nondelegable duty to install on the product, such as a water heater, the necessary and reasonable safety appliances at the factory. As to independent contractors and employers, such a duty has been imposed by the common law in a long catalogue of cases. The criterion of the nondelegable character of such duties is primarily the conclusion of the courts "that the responsibility is so important to the community that * * * (here the manufacturer) should not be permitted to transfer it to another." Prosser, Torts § 70 (3d ed. 1964).
A recent case applying this principle in the field of products liability is Vandermark v. Ford Motor Company, 61 Cal.2d 256, 37 Cal. Rptr. 896, 391 P.2d 168 (1964). The manufacturer of an automobile with defective power brakes was held strictly liable in tort, although the manufacturer delegated the final steps in checking and completing the product to its authorized dealer, which had failed to adjust the brakes as it was supposed to do. The Court said that Ford could not "delegate its duty to have its cars delivered to the ultimate purchaser free from dangerous defects," and could not "escape liability on the ground that the defect * * * may have been caused by something one of its authorized dealers did or failed to do." 37 Cal. Rptr. at 899, 391 P.2d at 171. The fact that there was some element of agency by the franchised dealer does not minimize the basis of the decision in Vandermark: The manufacturer could not shift his responsibility to consumers for defects in the product, as manufactured, by admonishing the intermediate dealer to take certain safety precautions.
*127 State Stove's instructions attached to the water heater directed the installer to put on it a combination temperature and pressure relief valve. Its warranty did not apply unless the combination valve was used. State Stove argues, and the Court holds, that the failure of Yates and Gary, and their agent Pittman, to install the combination valve was an intervening act of negligence which operated to terminate the effect of State Stove's marketing of the unsafe heater with defective thermostats and inadequate dip tube.
However, the trial court was warranted, I think, in finding that the unsafe condition of the product was a substantial factor in bringing about complainants' damages. This is ordinarily an issue for the trier of fact. This involves the question of whether State Stove can shift its responsibility to the intermediate purchaser. It is undisputed that the thermostats did not work. As Prosser states, it is a "question of the extent of the defendant's original obligation." So the issue is whether State Stove should be relieved of liability for something that it has caused, along with other causes. Prosser, Torts 309 (3d ed. 1964).
Four-County Electric Power Association v. Clardy, 221 Miss. 403, 73 So.2d 144, 149, 44 A.L.R.2d 1191 (1954), was a suit for personal injuries to a well driller who came in contact with defendant's high voltage electric line. It was contended that plaintiff's own negligence was the sole intervening cause of his injuries. But it was held that "[w]hether there was an independent, intervening cause of appellee's injuries, wholly disconnected from and having no causal relation to appellant's negligence, was a question which was properly submitted to the jury."
The acts of State Stove and of Yates and Gary were, in a sense, concurring causes of the explosion. See 38 Am.Jur., Negligence §§ 67-72 (1941). Moreover, the omission of Yates and Gary should be regarded as a normal incident of the risks State Stove created. A normal intervening cause of this type does not supersede the defendant's liability. Prosser, Torts 315 (3d ed. 1964).
The mere fact that a product is to undergo the installation of pipes and valves should not be sufficient to relieve the seller of liability under the Restatement rule. Here the defects which began the chain of events leading to the explosion originated with the defective thermostats, and the dip tube. See Restatement (Second), Torts § 402A, comment p. In its manufactured condition, the water heater was not reasonably safe for the use intended. Vandermark v. Ford Motor Co., 61 Cal.2d 256, 37 Cal. Rptr. 896, 391 P.2d 168 (1964). The manufacturer should not escape liability by delegating to an intermediary the duty to install safety devices to protect against defects in the product.
Furthermore, if we consider State Stove's instructions and limited warranty as in the nature of a disclaimer, such does not bar a tort action under these circumstances. There is no evidence to show that the Hodges knew of, or much less consented to, any such disclaimer. See Franklin, When Worlds Collide: Liability Theories and Disclaimers in Defective-Product Cases, 18 Stanford L.Rev. 974 (1966). Restatement (Second), Torts § 402A, comment m, concludes that the consumer's cause of action "is not affected by any disclaimer or other agreement, whether it be between the seller and his immediate buyer, or attached to and accompanying the product into the consumer's hands."
E.I. Du Pont de Nemours & Co. v. Ladner, 221 Miss. 378, 73 So.2d 249 (1954), is not controlling here, I suggest. The manufacturer of a chemical compound used in processing soybean meal notified the processor by letter and in person that the compound should not be used for cattle feed. Nevertheless, the processor so used it. It was held that the processor's conscious acts of refusing to heed these warnings, and selling the feed to another person for cattle, was an independent, efficient intervening *128 cause, not foreseeable by Du Pont, and thus superseded Du Pont's responsibility for its original negligence.
In the instant case, neither the instructions nor the limited warranty notified buyers that the thermostats were defective or not reasonably safe for the use for which they were intended. They simply directed the use of a combination valve. Moreover, Ladner did not consider the doctrine of strict liability in tort. That doctrine, the sequence of facts, the unsafe nature of the thermostats and dip tube, and other stated circumstances do not justify relieving State Stove of its responsibility for complainants' damages, and shifting it exclusively to Yates and Gary.
In a negligence action, an intervening act, the likelihood of which was definitely increased by defendant's act or caused by defendant's act, is not a superseding proximate cause of injuries incurred by reason of it. Hill v. Wilson, 216 Ark. 179, 224 S.W.2d 797 (1949).
Where negligence is an issue, the rule is settled that where one party's negligence cooperates with the negligence of another, both are liable for damages ensuing from them. In short, both actors are liable where the negligence of two or more people concurrently bring about an injury to another. Keith v. Yazoo & M.V.R. Co., 168 Miss. 519, 151 So. 916 (1934); Cumberland Tel. & Tel. Co. v. Woodham, 99 Miss. 318, 54 So. 890 (1911). The effect of the former negligence had not ceased, "but cooperated with that of the other in effecting the injury." So if a defendant is negligent, and this negligence combines with that of another, or with any other independent intervening cause, he is liable, although his negligence was not the sole negligence, or the sole proximate cause, and although his negligence, without such other independent intervening cause, would not have produced the injury. Gulf Ref. Co. v. Brown, 196 Miss. 131, 148, 16 So.2d 765, 769 (1944).
Again, the negligence action offers some guide as to the effect of misconduct of the intermediate dealer upon the strict liability of the manufacturer. It is well settled that the dealer's negligence in failing to discover the defect, or to take precautions against its existence, will not relieve the maker of liability. Cf. Burk v. Creamery Package Mfg. Co., 126 Iowa 730, 102 N.W. 793 (1905); Moehlenbrock v. Parke, Davis & Co., 141 Minn. 154, 169 N.W. 541 (1918); Farrell v. G.O. Miller Co., 147 Minn. 52, 179 N.W. 566 (1920).
Here there is causation in fact, and also proximate or responsible cause reaching to State Stove. Prosser, Torts 282-309 (3d ed. 1964).
For these reasons, I respectfully dissent in part, but only from the reversal of the decree against State Stove. On that point, I would affirm.
RODGERS, PATTERSON and INZER, JJ., join in this dissenting opinion.