374 So.2d 772 (1979)
MISSISSIPPI POWER AND LIGHT COMPANY
v.
Clarence B. JOHNSON, Jr.
No. 51164.
Supreme Court of Mississippi.
August 1, 1979.
Rehearing Denied September 26, 1979.
Wise, Carter, Child, Steen & Caraway, Natie P. Caraway, Jackson, for appellant.
Cothren, Pittman & Ferrell, Crymes G. Pittman, Jackson, Tullos & Tullos, Raleigh, Allen & Allen, Brookhaven, L.D. Pittman, Raleigh, for appellee.
*773 Before SUGG, WALKER and LEE, JJ.
WALKER, Justice, for the Court:
This appeal arises out of a case filed in the Circuit Court of Smith County, Mississippi, as a result of an accident which occurred on April 25, 1977, on the campus at Mississippi College. Appellee Johnson sustained electrical burns, resulting in the amputation of his arm below the elbow, when metal coat hangers in his hand came in contact with an uninsulated, energized power line, transmitting eight thousand volts, owned by the appellant Power Company.
At the conclusion of the trial, a jury returned a verdict for $100,000 in favor of Johnson. The Power Company perfects this appeal from that verdict.
Johnson was twenty-one years of age at the time the accident occurred and had been married on December 26, 1976, approximately four months prior to the accident. He entered Mississippi College in the fall of 1976, majoring in political science, having graduated from Copiah Lincoln Junior College at Wesson. Johnson graduated from Brookhaven High School, where he took courses in biology, chemistry and physics. During the three summers he was in high school, he worked for a federally funded city youth program on a regular forty-hour per week basis. The work consisted of working around the ballpark, cutting grass, painting concession stands and bleachers, and lining the fields before games. The summer following his graduation from high school, he worked at a self-service gas station in Texas as a cashier. At Copiah Lincoln Junior College, Johnson completed the school's requirement of six hours of science by taking biology. After graduating from Copiah Lincoln Junior College, and prior to enrolling in Mississippi College, he worked at Morgan & Lindsey in Brookhaven as a stock boy.
In the fall of 1976, Johnson enrolled at Mississippi College and lived in Ratliff Hall with his roommate, Dwight Lamar Terry. They lived in Room 415 the first semester, but moved to Room 422 the second semester because they wanted a bigger room. While living in Room 422, they would crank the windows for ventilation purposes, but the time of the accident was the first time Johnson ever raised the window all the way up.
On the night of the accident, Johnson, his roommate, and two other students stopped outside the dormitory after eating supper in the cafeteria. One of the students desired to borrow a T-shirt from Johnson's roommate. Johnson went to their fourth-floor room, got the T-shirt, walked to the window in the room on the south side of Ratliff Hall, and threw the T-shirt out of the window to his roommate and two friends standing on the ground. The T-shirt fell across a power line owned by appellant.
The power line ran along the south side of Ratliff Hall at a slight angle, so that the line was not completely parallel to the south side of Ratliff Hall. The line was 5.8 feet from the south side of the building at the point where appellee came in contact with it. The line, at the point he came in contact with it, was 8.8 feet from the edge of the window where Johnson was standing, at an angle downward.
After several unsuccessful attempts to dislodge the shirt by throwing books and a tennis ball at it, Johnson got three metal coat hangers out of his closet, straightened them, and then twisted them together. It took him from five to ten minutes to straighten the hangers and twist them together. After doing this, he then went to the window, leaned out and reached out as far as he could with the coat hangers in his left hand, and attempted to dislodge the T-shirt from the power line with the metal coat hangers by snaring the T-shirt and pulling it from the line. Johnson knew that the line in question was a power line, but he had no prior education, training or experience with electricity, and stated that he did not know that this line would shock or electrocute him. However, as he attempted to get the shirt off the line, the coat hangers came in contact with the line, causing a loud, booming noise and a ball of fire which knocked Johnson back into his room. He sustained electrical burns to his left *774 hand and arm to the extent that it was ultimately necessary to amputate his left hand at a point approximately halfway between the elbow and wrist.
The evidence established that the Power Company, through its employees, was aware of the location of the power line in relation to the windows of the dormitory.
It was also established that it was not an uncommon practice for students to throw things such as laundry, water, frisbies, sacks of clothes, etc. out of dormitory windows. One witness testified that he had observed people sitting on window sills.
It was further established that neither the Power Company nor any other person had ever warned Johnson, either verbally or by posted signs, that contact with the lines would be dangerous or could result in injury.
At the conclusion of all the evidence, the court instructed the jury that Johnson was negligent as a matter of law in failing to exercise reasonable care for his own safety and well-being. The question whether Johnson's negligence was the sole proximate cause of his injuries was submitted to the jury. The jury was also instructed that before they could return a verdict for the plaintiff against the defendant Power Company, they must find that the Power Company should have reasonably foreseen or anticipated that some injury would probably occur from the location of the power line.
Additionally, the court instructed the jury as follows:
The Court instructs the jury that one constructing and maintaining high voltage election (sic) power lines must exercise the highest degree of care in placing and maintaining its line so as to guard against contact that might reasonably be anticipated by the party so constructing or maintaining the lines, and it is not necessarily sufficient that the power company merely construct and maintain its lines in accordance with the minimum standards fixed by the National Electric Safety Code unless those standards are commensurate with the conditions then and there existing, but the power company must exercise the highest degree of care commensurate with the conditions existing at the particular location, and must so place and maintain its high voltage lines so as to guard against contact, that might reasonably be anticipated, at that particular location. Therefore, if you believe from a preponderance of the evidence in this case that the defendant, Mississippi Power & Light Company, failed to construct or maintain its power lines on the South end of Ratliff Hall at Mississippi College with that degree of care commensurate with the conditions existing at that particular location, and you further find that said failure, if any, was negligence, and that such negligence, if any, proximately caused or proximately contributed to the accident in question and to Plaintiff's injuries, then it is your sworn duty to return a verdict for the Plaintiff, even though you may believe from a preponderance of the evidence that the location and maintenance of the power line did conform to and comply with the minimum standards of safety fixed by the National Electric Safety Code.
The court also instructed the jury that, under the facts in this case, the plaintiff failed to exercise reasonable care for his own safety and well-being by attempting to remove the shirt from the power line in the manner he chose; that he was negligent; and that if the jury found that said negligence of plaintiff was a proximate contributing cause of the accident and resulting injuries, any recovery by the plaintiff must be reduced in proportion to his [Johnson's] own negligence which contributed to the accident and resulting injuries.
After being charged by the court as to the law, the jury returned to the juryroom and, after deliberation, returned a verdict in favor of Johnson for $100,000.
On this appeal, the Power Company does not assign as error that the verdict was excessive, but assigns as error the following:

*775 I.
That the court erred in overruling defendant's motion for a directed verdict and peremptory instruction and in failing to hold, as a matter of law, either that the accident was not foreseeable or that the plaintiff's negligence was the sole cause of the accident.
In support of this assignment of error, the appellant Power Company relies heavily upon Tallahatchie Valley Electric Power Association v. Clinton, 347 So.2d 348 (Miss. 1977), a television antenna case. There the Court observed that since the advent of electricity in Mississippi, this Court has required electric power companies to exercise the highest degree of care in dealing with this deadly agency. Temple v. McComb City Electric Light and Power Co., 89 Miss. 1, 42 So. 874 (1907) and Triplett v. American Creosote Works, Inc., 251 Miss. 727, 171 So.2d 342 (1965), where it was said: "The Power Association was required to exercise the highest degree of care in the construction and maintenance of its high powered lines." (Id. at 737, 171 So.2d at 347). However, the Court went on to reverse a $125,000 verdict in favor of the plaintiff, being of the opinion that Tallahatchie Power Association was guilty of negligence so slight, if any, and Clinton, the plaintiff, guilty of negligence so great, that his negligence was the sole proximate cause of his death. In that case, the home over which the antenna was erected to a height of forty feet was in a remote and isolated area, approximately three-quarters of a mile from the nearest neighbor, and the power line was 18.85 feet from the nearest point of Clinton's house and 33.78 feet high. Moreover, Clinton had been repeatedly warned of the dangers presented and, to a degree, instructed on the proper method of removal of the television antenna. The Court distinguished Tallahatchie, supra, from Mississippi Power and Light Company v. Shepard, 285 So.2d 725, 82 A.L.R.3d 86 (Miss. 1973) and Delta Electric Power Association v. Burton, 240 Miss. 209, 126 So.2d 258 (1961) where the power lines were in a "veritable forest of television antennas," saying:
We think that mature individuals of ordinary intelligence in a time of universal use of electricity must know its dangerous propensities and when this knowledge is refreshed by repeated warnings, leaving no doubt as to the danger, but which is disregarded, there remains little, if anything, that a power company can or could do to prevent the accident. (Emphasis added). (347 So.2d at 351).
In the case sub judice, the electric power lines were not erected in a remote area and Johnson was not given any warning either by notices posted by the power company or verbally by other individuals, distinguishing it in that respect from the Tallahatchie case. It is true that Johnson was a mature young man and that his act in using the coat hangers to retrieve the T-shirt from the electric power lines was, under the circumstances, negligence. However, the jury was instructed that Johnson was negligent and that they should reduce any award in his favor, if any, in proportion to his negligence.
We are of the opinion that the question of whether his negligence was the sole proximate cause of his injuries and damages was properly presented to the jury.
We are also of the opinion that whether the power company could have reasonably foreseen that some accident or injury would occur as a result of the close proximity of the power lines, 5.8 feet, to this dormitory occupied by college students on Mississippi College Campus was a question for the jury to determine. As pointed out earlier, it was not unusual for students to throw things out the windows. In our opinion it was only a matter of time until something lodged on one of those lines, resulting in an accident like the one we now have before us, where a student was injured attempting to dislodge or retrieve a T-shirt from the power line.
We are therefore of the opinion that the question of whether the power company was negligent in maintaining its power line in the location described, and whether an injury resulting therefrom could be reasonably foreseen, as well as the degree of negligence attributable to Johnson, was properly submitted to the jury.

*776 II.
The appellant next contends the court erred in sustaining the plaintiff's objections to the introduction of the bound volume of the "National Electrical Safety Code Interpretations, 1961-1977." This assignment of error is without merit. See Milner Enterprises, Inc. v. Jacobs, 207 So.2d 85 (Miss. 1968).

III.
The appellant also contends that the court erred in allowing into evidence the opinion of two witnesses, who were at the scene of the accident, that they did not know the line in question was a power line.
We are of the opinion that admission of this evidence, if error, was harmless error because Johnson testified that he knew the line was a power line.
For the foregoing reasons, the judgment of the lower court is affirmed.
AFFIRMED.
SMITH and ROBERTSON, P. JJ., and SUGG, BROOM, LEE and COFER, JJ., concur.
PATTERSON, C.J., and BOWLING, J., took no part.