223 So.2d 638 (1969)
FORD MOTOR COMPANY
v.
Reeford DEES.
FORD MOTOR COMPANY
v.
Floyd ADAMS.
Nos. 45313, 45314.
Supreme Court of Mississippi.
May 26, 1969.
Rehearing Denied July 3, 1969.
*639 Hassell H. Whitworth, Watkins & Eager, Jackson, for appellant.
Sullivan, Dunbar & Smith, David R. Hunt, Clarksdale, for appellees.
ROBERTSON, Justice:
On June 23, 1966, Appellee Reeford Dees purchased a new Ford pickup truck from the Ford dealer in Rosedale, Mississippi. On August 7, 1966, on a clear, dry day, about six o'clock in the afternoon, the truck was being driven in a southerly direction on a level blacktop road by Appellee Floyd Adams, with Jimmy O'Brian sitting next to the driver, and Reeford Dees, the owner, sitting on the right side.
These three eyewitnesses testified that as the truck approached a gradual curve to the left at a speed of about 50 to 60 miles per hour suddenly and without warning the steering wheel turned loosely in the hands of the driver and would not turn the front wheels. The truck veered off the right side of the road, hit a slight embankment, traveled 100 feet or so along a roadside ditch, then swerved across the road to the left side, ran across a shallow drainage ditch, and ended up in a field. The cab separated from the chassis and came to rest about 40 or 50 feet away with Adams, O'Brian and Dees still in the cab.
The driver, Floyd Adams, and the owner, Reeford Dees, were injured and sued the Ford Motor Company, the manufacturer of the pickup truck, in the Circuit Court of Coahoma County. The two cases were consolidated for trial, and after a full trial, the jury returned a verdict for $5,000 in favor of the owner, Reeford Dees, and a verdict for $9,800 in favor of the driver, Floyd Adams.
This is a strict products liability case. The appellees, Floyd Adams and Reeford Dees, each charged in his amended declaration:
"The aforesaid driver lost control of the vehicle because of the fact that even though the steering wheel would turn, it was free and would not steer or move the front wheels. As a result of the driver not being able to steer or control the vehicle, it ran into the right hand side of the road and into a ditch embankment and swerved to the other side of the road, whereupon the cab, grill, front fenders and hood broke loose from the chassis and running gear and travelled approximately fifty feet through the air landing on the back of the cab.

*640 "The loss of control of the vehicle and the separation of the cab, grill, front fenders and hood from the chassis was solely and exclusively due to the negligent construction of the vehicle by the Defendant in that the mounting and retaining bolts and devices were improperly and negligently installed at the time of assembly rendering the vehicle as sold to the Plaintiff inherently hazardous and unsafe for the purposes for which it was purchased and such negligence was solely and proximately the cause of the injuries and damages sustained by the Plaintiff."
The truck at the time of the accident was about six weeks old and had been driven about 5,000 miles. The testimony was that the truck had not been involved in an accident of any kind and no repairs had been made to it. It was in the same condition that it was in when delivered by the manufacturer to the dealer and in turn delivered by the dealer to the purchaser.
The cab of a Ford pickup truck is secured to the chassis by the use of six mounting assemblies, three of which are on the left side of the vehicle and three on the right side. Each mounting assembly contains five component parts: (1) a steel bolt threaded at one end, (2) a top steel flange or washer, (3) a top rubber grommet, (4) a bottom rubber grommet, and (5) a bottom steel flange or washer to which is welded a threaded neck which serves as a nut. The frame or chassis of the pickup truck contains six holes, three on each side, which are utilized in bolting the cab to the body.
The Ford Motor Company assembles these vehicles. The steel bolt is inserted through the top metal flange, the top rubber grommet, the side of the cab, then through the hole in the frame of the truck, the bottom rubber grommet, and lastly, the bolt is screwed into the threaded neck of the bottom metal flange.
The eight errors assigned can be summarized in three contentions:
(1) That the lower court erred in refusing to direct a verdict for the appellant because the appellees had failed to make out a prima facie case;
(2) That the trial court erred in admitting the testimony of Alvin Doyle as an expert witness because he was not a metallurgical engineer nor skilled in the field of metallurgy, that he should not have been allowed to state his conclusion as to the ultimate proximate cause of the accident and thus invade the province of the jury, that the court should have sustained objections to the hypothetical questions propounded to Doyle because they were inaccurate and inadequate; that Doyle should not have been allowed to give opinions which constituted speculation, conjecture, and guesswork; and
(3) That the lower court erred in granting instructions numbered 2, 4, 5 and 9 for the appellees and in denying instructions numbered 4 and 5 requested by the appellant.
Parts of five of the six mounting assemblies were introduced into evidence. Excellent pictures of the roadway showing the place of the accident were introduced, as were pictures of the mounting assemblies as inserted in the cab and chassis, and also pictures of the separated cab and chassis. The actual steering wheel, steering column, flexible coupling and flanges were introduced as well as excellent pictures of each.
The jury thus had oral and documentary, direct and circumstantial, evidence to consider in arriving at their verdicts.
The actual parts of the mounting assemblies plainly showed the broken neck of the bottom steel flange still threaded on the steel bolt. Each juror could see for himself what actually happened and also observe the thinness of the metal of the threaded neck and the flimsiness of the welding of the neck to the bottom flange. It does not require the services of a metallurgical engineer to interpret this physical evidence to them. Each juror could see for himself *641 the actual steering mechanism, the torn flexible coupling, and how the mechanism could be separated with an inch or two's play in the parts of the steering apparatus.
We feel that Alvin Doyle was qualified by his thirty years experience as part owner and manager of a large automotive repair shop to testify as an expert on the construction and working of the steering mechanism of a pickup truck and also the manner in which the cab was bolted to the chassis. He was qualified to point out to the jury how the steering column would separate and cause the steering mechanism to fail if there was play between the cab and chassis.
He did aid the jury with his expert knowledge, but he did not invade the province of the jury and furnish them the ultimate answer. He did offer, and we think rightly so, some light on the subject of the actual assembly and working of the steering mechanism.
We reviewed at great length the principle of strict liability in tort in Ford Motor Company v. Cockrell, 211 So.2d 833 (Miss. 1968). We answered practically all of the contentions made in this case adversely to the appellant in Cockrell.
The doctrine of strict liability in tort is strict in the sense that there is no need to prove that the manufacturer was negligent. If the article left the manufacturer's control in a dangerously unsafe condition, or was not reasonably safe, or was unsafe for its intended use, the manufacturer is liable whether or not he was at fault in creating the unsafe condition, or in failing to discover and eliminate it. Ford Motor Co. v. Cockrell, supra; State Stove Manufacturing Co. v. Hodges, 189 So.2d 113 (Miss. 1966).
The appellant was not entitled to a peremptory instruction. This was a question for the jury to decide after considering all of the evidence, oral and documentary, direct and circumstantial.
We have carefully read and studied the four instructions granted appellees which were complained of by the appellant and the two instructions refused the appellant. We think that the instructions granted correctly express the principles of law applicable to the facts of this case. The two instructions refused the appellant were properly refused because there were elements lacking which made them incomplete and confusing and therefore not a correct expression of the law as applicable to this case.
The judgment of the lower court for both appellees is affirmed.
Affirmed.
GILLESPIE, P.J., and JONES, PATTERSON and INZER, JJ., concur.