234 So.2d 620 (1970)
FALSTAFF BREWING CORP. et al.
v.
Carrie Lee Colenburg WILLIAMS.
No. 45648.
Supreme Court of Mississippi.
March 30, 1970.
*621 Frederick C. Berger, Natchez, for appellants.
Gwin & Gwin, Natchez, Daniel, Coker, Horton & Bell, John M. Roach, John B. Clark, Jackson, for appellee.
ROBERTSON, Justice.
The Appellee, Carrie Lee Colenburg Williams, filed her bill of complaint, an attachment in chancery, against Falstaff Brewing Corporation, Bluff City Distributors, Inc., and Charles McDonald in the Chancery Court of Adams County, Mississippi.
The chancellor rendered judgment for the appellee for $18,500 damages against Appellants, Falstaff Brewing Corporation and Bluff City Distributors, Inc.; the bill of complaint was dismissed as to Charles McDonald only.
About 10 a.m. on Thursday, June 18, 1964, Appellee Williams, an employee of Bob's Eats, a cafe located on Highway 61 north of Natchez, opened a compartment of a beer cooler behind the bar of the restaurant by sliding back the flexible door. She and another employee had been instructed by the proprietor, Mrs. Elizabeth Aldrich, to bring some bottled Falstaff beer from the cooler behind the bar to a cooler in the restaurant side of the cafe. Before she touched anything, a bottle of beer exploded and a piece of glass made a three-fourth's inch cut across the cornea of her left eye. Even though she received very prompt surgery and continuous treatment thereafter, within a year she completely lost the sight of that eye and it had to be removed and replaced with a false eye.
The appellee charged in her bill of complaint that Appellant Falstaff Brewing Corporation negligently manufactured the bottle of beer that exploded in that it was bottled in such a way that the pressure within the bottle was too great or that Falstaff negligently used a defective bottle. She charged both Falstaff and Bluff City with negligently selling, handling and delivering the bottle that exploded in that it was jarred or jostled, thereby increasing the pressure, or that the bottle was cracked and weakened in the process of delivering it. Alternatively, the appellee alleged that the doctrine of res ipsa loquitur applied, or that the appellants were jointly and severally strictly liable in tort for having manufactured, shipped, sold, handled and delivered the bottle in such a way that it was not reasonably safe for its intended use by human beings and in such a way that it was unreasonably dangerous for its intended use by human beings.
All of the defendants joined in one Answer. They admitted that on June 18, 1964, Bluff City Distributors, Inc., was the Falstaff distributor for Adams County, Mississippi, and that on occasions bottled Falstaff beer was sold and delivered to Bob's Eats on Highway 61 near Natchez. They denied any negligence on their part and charged that if there was an explosion that it "was caused solely by the acts of the operators of Bob's Eats and/or the complainant, Carrie Lee Colenburg Williams." In an amended answer, they charged that "if any beer was placed in a cooler and/or allowed to freeze, it was done so by the owner of Bob's Eats, Mrs. Elizabeth Aldrich, and that these defendants had absolutely no control over any beer once it was in her control * * *." They charged that an explosion, if any, "was caused solely by the intervening acts of the operator of Bob's Eats * * *" or her employees.
Mrs. Aldrich testified that she regularly bought Falstaff beer from Bluff City Distributors of Natchez and that it was delivered in case lots on Monday and Friday of each week. It was placed by the Falstaff distributor, Bluff City, in the storeroom of *622 the cafe. Each morning, Mrs. Aldrich would check to see which brand of beer needed replenishing, and she would personally move the beer from the storeroom to the cooler back of the bar, or she would instruct one of her employees to do so. She testified that the beer that appellee had been instructed to move on the morning of June 18th would have been placed in the cooler on June 17th. She stated that this transfer was carefully made and that none of the bottles was broken, cracked or jostled. Falstaff beer was always placed in the front portion of the left compartment of the cooler. Both Mrs. Aldrich and appellee positively testified that it was a bottle of Falstaff beer that exploded.
Dr. Charles Stern, an ophthalmologist of Natchez, Missisippi, testified that there was a three-fourth's inch cut through the cornea and the sclera. The iris and the ciliary body were prolapsed through the wound. He did not find any glass in the eye, and it was his opinion that a cut of this kind is usually made by a large piece of glass that hits the eye and then falls away.
Melvin C. Helbig, plant general manager of Falstaff in New Orleans, testified that Falstaff does use both new and used bottles but that in the long process of cleaning, sterilizing, filling, heating, crowning, and pasteurizing that any defective bottle would explode. Even if any defective bottle has gotten through the pasteurizer, then on the drop of about twelve inches into the case, that bottle would break. The cases go on a conveyor and are palletized in layers five to seven cases high; they are then ready for shipment either by rail or truck.
Appellants' counsel asked Mr. Helbig:
"And then your distributor comes here from Natchez, the distributor comes down there and picks the beer up in trucks and brings it back here?".
Helbig answered: "Yes, we load it on his truck with fork lift trucks."
Helbig stated that the process used by Falstaff was the accepted, approved and proper method of bottling beer, and that every bottle sent to and sold in Natchez went through that process.
Daniel J. O'Connell, a consulting engineer practicing in New York, was called by the appellants as an expert on glass and glass breakage. In response to a long hypothetical question (wherein appellants' counsel outlined the procedure used by Falstaff in cleaning, sterilizing, filling, pasteurizing, heating, crowning and casing bottles of beer) O'Connell answered that this was the normal and customary method of bottling beer. Other questions by appellants' counsel and O'Connell's answers were:
Q. Now, assume bottles were put in there and that bottle became frozen. Assume that the  upon the opening, no one touched that bottle of beer, now assume it was put in there, it wasn't broken when it was put in there. Assume that bottle, that box was opened and just as the box opened you heard a, the bottle popped, say like a fire cracker or a little gun going off, would you give the Court your explanation as to what caused it?
A. Well, if it wasn't touched, the only thing that would cause that would be internal pressure due to freezing, no other way. There's a low temperature, so it can't be gas, that's out. Nobody touched it, it's not in the manual control of anyone. No one struck it, the only thing left is internal pressure due to freezing, and it's in a cold cooler and it must have been there for some length of time. It wasn't just put in there an hour ago.
Q. Well, would twenty-four hours be sufficient?
A. Well, it's hard to say when I don't know what the particular characteristics *623 of the cooler are, but certainly it was in there, in my opinion anyway, at least three or four days.
O'Connell further stated that in an explosion due to freezing, the glass fragments blown away from the bottle would be very small, more in the nature of slivers. It should be here recalled that Dr. Stern testified that the cut on appellee's eyeball was made by a rather large piece of glass and that he found no glass in the eye.
In rebuttal, the appellee offered Mrs. Eula Lofton, who testified that she was the bartender at Bob's Eats and worked from 3 p.m. until 11 p.m. each day, that Falstaff was kept in the front of the left compartment of the cooler and Schlitz in the back part, that when she came to work a 3 p.m. on June 18 after the accident to the appellee that morning, Falstaff beer was in the front of the left compartment. She further testified that during the entire time that she worked at Bob's Eats that she had never seen any frozen beer in the cooler nor had she seen any frozen Coca-Cola or orange juice, that she had never had any trouble with anything freezing in that particular cooler.
In Johnson v. Coca-Cola Bottling Co., 239 Miss. 759, 125 So.2d 537 (1960), this Court held that the doctrine of res ipsa loquitur applied where a bottle of Coca-Cola unexplainably exploded and injured a person. We are inclined to feel that the rule of strict liability in tort is more applicable in exploding bottle cases.
In Escola v. Coca-Cola Bottling Co. of Fresno, 24 Cal.2d 453 at 461, 150 P.2d 436 at 440-441 (1944), a bottle of Coca-Cola exploded and injured the plaintiff, who was a waitress in a restaurant. The judgment for the plaintiff was affirmed by the Supreme Court of California. Justice Traynor, in his concurring opinion, offered a very logical explanation for the doctrine of strict liability in tort when he said:
"I concur in the judgment, but I believe the manufacturer's negligence should no longer be singled out as the basis of a plaintiff's right to recover in cases like the present one. In my opinion it should now be recognized that a manufacturer incurs an absolute liability when an article that he has placed on the market, knowing that it is to be used without inspection, proves to have a defect that causes injury to human beings. MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696, Ann.Cas. 1916C, 440 established the principle, recognized by this court, that irrespective of privity of contract, the manufacturer is responsible for an injury caused by such an article to any person who comes in lawful contact with it. Sheward v. Virtue, 20 Cal.2d 410, 126 P.2d 345; Kalash v. Los Angeles Ladder Co., 1 Cal.2d 229, 34 P.2d 481. In these cases the source of the manufacturer's liability was his negligence in the manufacturing process or in the inspection of component parts supplied by others. Even if there is no negligence, however, public policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market. It is evident that the manufacturer can anticipate some hazards and guard against the recurrence of others, as the public cannot. Those who suffer injury from defective products are unprepared to meet its consequences. The cost of an injury and the loss of time or health may be an overwhelming misfortune to the person injured, and a needless one, for the risk of injury can be insured by the manufacturer and distributed among the public as a cost of doing business. It is to the public interest to discourage the marketing of products having defects that are a menace to the public. If such products nevertheless find their way into the market it is to the public interest to place the responsibility for whatever injury they may cause upon the manufacturer, who, even if he is not negligent in the manufacture of the product, is responsible for its reaching the market. However intermittently *624 such injuries may occur and however haphazardly they may strike, the risk of their occurrence is a constant risk and a general one. Against such a risk there should be general and constant protection and the manufacturer is best situated to afford such protection."
This Court discussed and applied the doctrine in the recent cases of Ford Motor Co. v. Dees, 223 So.2d 638 (Miss. 1969); Ford Motor Co. v. Cockrell, 211 So.2d 833 (Miss. 1968); and State Stove Manufacturing Co. v. Hodges, 189 So.2d 113 (Miss. 1966). In Dees we said:
"The doctrine of strict liability in tort is strict in the sense that there is no need to prove that the manufacturer was negligent. If the article left the manufacturer's control in a dangerously unsafe condition, or was not reasonably safe, or was unsafe for its intended use, the manufacturer is liable whether or not he was at fault in creating the unsafe condition, or in failing to discover and eliminate it. Ford Motor Co. v. Cockrell, supra; State Stove Manufacturing Co. v. Hodges, 189 So.2d 113 (Miss. 1966)." 223 So.2d at 641.
From the evidence adduced, the chancellor could find that Falstaff in New Orleans loaded bottled Falstaff beer in case lots by fork lift truck into the truck of Bluff City Distributors, Inc. who transported it from New Orleans to Natchez, and there sold and delivered the beer in its original cases to Bob's Eats. The bottled beer remained in its original container in the storeroom until it was placed in the cooler back of the bar.
From the evidence the chancellor could find that it was a bottle of Falstaff beer, that exploded, that it was not frozen, and that the bottle exploded without being touched. The judgment of the chancellor is supported by substantial evidence. We, therefore, affirm the judgment.
Affirmed.
GILLESPIE, P.J., and JONES, PATTERSON, and INZER, JJ., concur.